# SUPREME COURT

OF

## THE STATE OF IOWA

AT

## DES MOINES, JANUARY TERM, A. D. 1896,

AND IN THE FIFTIETH YEAR OF THE STATE.

STATE OF IOWA *ex rel.* A. G. WEST, Appellant, v. THE CITY OF DES MOINES.

**Constitutional Law:** MUNICIPAL CORPORATIONS. Constitution, article 3, section 30, provides that "the General Assembly shall not pass local laws or special laws in the following cases: * * * For the incorporation of cities. * * * In all cases above enumerated, and in all other cases where a general law can be made applicable all laws shall be general and of a uniform operation throughout the state. *Held,* as Acts Twenty-third General Assembly, March 3, 1890, provide for annexation of cities under such conditions as can never apply to but one city, it is void and of a class of laws prohibited by said constitutional provision, though it is couched in general language.

NOTE.—On the powers of legislatures to annex territory to cities, see *State v. Cincinnati* (Ohio) 27 L. R. A. 737.

(521)

**Estoppel:** statute of limitations.  A city claims jurisdiction over territory annexed to it by a void statute.  It has exercised authority over that territory for more than four years to the exclusion of prior incorporations which said void statute purported to abolish and, in that time, it had levied taxes and made extensive improvements for which certificates and warrants were issued.  The law gives to the county attorney the right to institute ouster proceedings in case of municipal usurpation and makes it his duty to begin them if directed by the governor or General Assembly.  The city involved is the state capital, and two sessions of the Assembly met in it after said annexation had been completed, and it took no action.  No benefits to be anticipated by a severance are suggested.  The complainant is a nonresident who has but trifling interest involved.  The annexation was acted upon so rapidly as to make it plain that prompt action alone would stop important changes involving large interests.  *Held,* that while the statute allows such action to be brought within five years the plaintiff is now estopped to disturb the city's equitable claim to jurisdiction over the annexed territory.

**Practice.**  Leave given under Code, 3348, to prosecute an action in *quo warranto* is conclusive in that proceeding against an attack based on the ground that plaintiff's interest is trivial.

*Appeal from Polk District Court.*—Hon. C. P. Holmes, Judge.

Tuesday, January 21, 1896.

*Quo warranto* to test the right of the defendant city to exercise corporate authority over certain territory added to said city by legislative enactment.  Prior to 1890 the corporate limits of the city of Des Moines embraced eight square miles.   By an act of the Twenty-third General Assembly approved March 3, 1890, it is provided "that the boundaries of all cities in this state, which had by the state census of 1885, a population of thirty thousand or more, are hereby extended two and one-half miles in each direction from the present boundaries of said cities.   Such extension being so made as to leave the boundaries hereby created in a perfect rectangle; that all territory embraced within said extended boundaries, whether

the same is contained in cities, incorporated towns or otherwise, shall be and become a part of the city and subject to its jurisdiction and authority; and the corporate character of any annexed territory within the extended boundaries herein specified, shall cease and determine." Other sections of the act provide for the payment of the indebtedness of the cities so enlarged, and of the indebtedness of the cities within the annexed territory; for the exemption from taxation of lands used in good faith for agricultural and horticultural purposes; for the reorganization of the wards of said cities, and for elections therein. By the census of 1885, only the city of Des Moines was affected by the act, and, with the territory thus annexed, it embraces fifty-four square miles. In the added territory were only one city and seven incorporated towns. These eight corporations embraced, including one and one-half square miles of platted land not incorporated, thirteen square miles, which, with thirty-three square miles of unplatted and unincorporated land, make the added territory to the city forty-six square miles. The provisions of the act by which the municipal governments other than that of the city of Des Moines were to become extinct, and the entire territory become one corporation or municipality, were observed, so that in April, 1890, the change was complete, since which time the city of Des Moines has been thus constituted, and has exercised throughout said territory the rights and functions of a city government, including the levy and collection of taxes; establishing, opening, vacating, changing, and improving streets; the making of contracts; and the creating and payment of debts. In March, 1894, the state of Iowa, on the relation of A. G. West, filed in the district court of Polk county its information, in the nature of a *quo warranto*, reciting the provisions of the act of the Twenty-third General Assembly; the fact that it has application alone to the

city of Des Moines; that the act is unconstitutional and void, as being repugnant to the constitution of the state, in that it is a local or special law amending the charter of the city of Des Moines; that it, in effect, creates a corporation by the enactment of special laws; and that, if it is to be deemed a general law, it has not had, and cannot have, uniform operation. It is alleged in the information that, because of the invalidity of the act by which the city limits were enlarged, the acts of the city, as to the added territory, are without authority of law; and it is asked that they be so adjudged, and that the city be ousted from the exercise of such authority. To the information there was a demurrer, and the parties stipulated the facts; and the case, in that condition, was submitted to the court, which sustained the demurrer as to some parts, and overruled it as to others. By the ruling, the facts as stated in the information, together with those stipulated, were held insufficient to justify a decree for plaintiff, and from a judgment dismissing the petition the plaintiff appealed.—*Affirmed.*

*Gatch, Connor & Weaver* for appellant.

*J. K. Macomber, A. P. Chamberlain,* and *Hugh Brennan* for appellee.

Granger, J.—I. It is first said that the relator, A. G. West, has not sufficient interest to authorize him to invoke the action of the court in behalf of the state. Mr. West is not a citizen of Des Moines, as enlarged; but he is the owner of land within the added territory, but not in any of the corporations as they were before the annexation. The assessed valuation of his land is eighty dollars, and it is estimated that

he pays city taxes thereon to the amount of one dol-
lar and thirty-one cents.    This is thought to be too
trifling an interest to permit him to institute
the action.   The law provides that when the
county attorney, on demand, refuses or neglects
to commence such an action, any citizen of the state
having an interest in the question may apply to the
court in which the action is commenced, or to the
judge thereof, for leave to do so, and upon obtaining
such leave he may prosecute the action to final judg-
ment.   Code, section 3348.   This provision of the law
was complied with, and leave granted by the district
court.   This action is conclusive upon us.   The law
does not define what the interest shall be, and, con-
ceding that it must be a substantial one, it was a
question for the district court.   It was a question to
be settled before the suit was commenced.   The lan-
guage of the law is that "upon obtaining such leave
he may prosecute the action to final judgment."   Cer-
tainly the question of fact, as to the extent of the inter-
est, is one confided to the court to which application is
made.

II.   The constitutional questions as to the valid-
ity of the law making the annexation are important.
The parties, in argument, concede that the learned
judge who tried the case below held the law to be
unconstitutional, but denied the relief asked on the
ground of laches or estoppel.   Appellee, however, in
this court, insists that such a holding was erroneous,
and the questions are for consideration.   Logically,
the first question is whether or not the act is general,
or local and special, in its application.   It will
be seen that the act, in terms, is made to apply
to all cities which had, by the state census of
1885, a population of thirty thousand.   If the act had
specified the city of Des Moines as the one whose
boundaries were to be extended, there would be no

question that the law is local in its application. The law, as enacted, just as explicitly confines its application to the city of Des Moines as if the city had, in words, been named, for it was the only city in the state having the requisite population. Appellee contends that because of the language of the act, by which it is to apply to "all cities in this state, which had, by the state census of 1885, a population of thirty thousand or more," it is a law of general application. The constitutional language is, after stating certain exceptions, "All laws shall be general and of uniform operation throughout the state." It is not necessary to an observance of this provision that the law should operate uniformly on all the people of the state, nor, when the legislation pertains to cities, is it important that it should operate uniformly on all cities throughout the state. But if the law is made to operate upon a particular condition as to persons or property, and is operative whenever and wherever the same conditions exist, affixing the same consequences, then it is a general law in its operation, even though it only operates on one of the conditions or classes specified. To illustrate, we may instance the laws regulating banking, insurance, agricultural societies, and the like. If the law is so framed that it does and can apply to but one bank, company, or society, in its operation, it is special legislation. General legislation looks not alone to the present, but to the future; and a law which at a given time operates as to only one bank, company, or society, because there is but one such, but is so framed as to operate on the same conditions, when and where they arise in the state, is a general law, and of uniform operation. See *McAunich v. Railroad Co.*, 20 Iowa, 338; *Express Co. v. Ellyson*, 28 Iowa, 370; *Von Phul v. Hammer*, 29 Iowa, 222; *Haskel v. City of Burlington*, 30 Iowa, 232. This rule is one of general recognition.

As applied to cities, if the act is such that it is operative, because of its terms, as to but a single city, it is local legislation. *Town of McGregor v. Baylies*, 19 Iowa, 43; *Owen v. City of Sioux City*, 91 Iowa, 190 (59 N. W. Rep. 3). Counsel for the defendant city cite the above cases, with many others announcing the same rule, and on them base the claim that the act under consideration is of general application, even though there is but one city to which it can apply. It is true that in many of the cases cited, where the law has been held of general application, there was but one city of the class intended to come within the rule of the legislative act; but it is not true that in any of the cases a law, though general in terms, where it could in no event become operative on but a single city, has been held to be a general law. Had the act in question been made applicable to all cities of over thirty thousand inhabitants, without a qualification that, under known facts, would exclude its operation as to any other such city, the case would be different. But because a law thus arbitrarily extending city limits could not be made of general application, because of the absence of conditions to justify it, it was made to apply only to cities of that number of inhabitants at a particular date in the past, when there was but one such city to which it could apply, so as to avoid the possibility, even, of any other city coming within its provisions. The act is singularly specific in this respect, not even permitting any chances as to what might be the actual population of other cities but making it dependent on the census return of 1885, known at the time the act was passed, which clearly proves that only the city of Des Moines was intended as the subject of such legislation. In such a case, even though the language of the act is general, it is special legislation. In *State v. Hammer*, 42 N. J. Law, 435, the court, in treating this

subject from a constitutional standpoint, said, as to the effect of such general language, where but two cities of the state could be affected by the law: "The result, therefore, is that the act was intended to apply, and that it does and must ever apply, to these two cities alone; and the legal effect of the law, as now constituted, is the same as though it had, in express terms, declared that it was not to be operative through the state at large, but in the cities of Elizabeth and Newark only." The law was held to be local in its application, and unconstitutional. The conclusion is, unmistakably, that the act in question is local legislation.

III. With the question settled that the act is local legislation, we are next to determine whether or not it is of the class of legislation prohibited by the constitution. The question has received extensive consideration in argument by counsel on both sides. The constitution does not in all cases prohibit special or local legislation. It permits it in some cases. Section 30 of article 3 of the constitution reads as follows: "The general assembly shall not pass local or special laws in the following cases: * * * For the incorporation of cities and towns: * * * In all cases above enumerated, and in all other cases where a general law can be made applicable, all laws shall be general, and of uniform operation throughout the state." There are six of the enumerated cases. It has been thought, and it is appellant's contention here, that the prohibition of the section as to local or special legislation is absolute as to the "cases above enumerated," and as to other cases the prohibition is conditional, depending upon whether or not general laws can be made applicable. It is now urged for the first time, so far as we know, that there is no positive prohibition, but that, as to both cases or classes of laws, as designated in the section,

the prohibition is conditional. Appellee, by a transposition of the last sentence, and a grammatical application of the rules of language to it, gives the following as expressive of its meaning: "In all the cases above enumerated where a general law can be made applicable, and in all other cases where a general law can be made applicable, all laws shall be general and of a uniform operation throughout the state." This means, stripped of its verbiage, that all laws shall be general and of uniform operation throughout the state, where such a law can be made applicable. This renders meaningless more than half the words employed in the section, and nearly half of those in the sentence we are construing. If the sentence could be made clearer by a transposition, ours would be this: "In all the cases above enumerated, all laws shall be general and of uniform operation throughout the state, and in all other cases where a general law can be made applicable." By this we preserve and give a meaning to all the language employed, and observe the legal requirements as to construction. The other is a manifest disregard of the rule. To us the section is not open to serious question in the respect suggested. The prohibition as to local and special legislation is absolute, as to the enumerated cases. While this precise question has not been considered, this section has been so applied in a number of cases. *Ex parte Pritz,* 9 Iowa, 30; *Von Phul v. Hammer,* 29 Iowa, 222; *Town of McGregor v. Baylies,* 19 Iowa, 43; *Haskel v. City of Burlington,* 30 Iowa, 232; *State v. King,* 37 Iowa, 462; *Richman v. Supervisors,* 77 Iowa, 513 (42 N. W. Rep. 422). If the act in question is local or special legislation, and is prohibited by the section of the constitution considered, it is not contended that the fact that it is an act merely extending the boundaries of the city will give it validity. That the constitutional prohibition extends to acts amending charters and acts creat-

ing such corporations, see *Ex parte Pritz, supra; Town of McGregor v. Baylies, supra;* and *Von Phul v. Hammer, supra.* Our conclusion is that the act providing for the annexation is against the express provisions of the constitution prohibiting the passing of local or special laws for the incorporation of cities, and is therefore void.

IV. It is next to be determined whether or not, with the law giving rise to the annexation absolutely void, the legality of the present city organization can be sustained under the rule of estoppel or laches. On this branch of the case a large number of authorities have been cited, and the newness of the question, as well as the great interests involved, makes it one of great importance. The foundation for the application of the doctrine of estoppel is the consequence to result from a judgment denying to the city of Des Moines municipal authority over the territory annexed, after the lapse of four years, during which time such authority has been exercised, and the changed conditions involving extensive public and private interests. It will be remembered that the act of annexation resulted in the abandonment of eight municipal governments, which before the annexation were independent, and bringing them under the single government of the city of Des Moines. This involved a vacation of all offices in the city and towns annexed, and the delivery of all public records and property to the officers chosen for the city so enlarged. For four years taxes have been levied, collected, and expended under the new conditions; public improvements have been made, including some miles of street curbing, paving, and sewerage, for which certificates and warrants have been issued, and contracts are now outstanding for such improvements. In brief, with the statement that for the four years the entire machinery of city government has been in operation,

the situation may be better imagined than expressed. It is hardly possible to contemplate the situation to result from a judgment dissolving the present city organization, and leaving the territory formerly embraced within corporate lines as it would be left. Of all the cases to which we are cited, involving the validity of municipal organizations, where the consequences to result from a judgment of avoidance are considered, not one presents a case of such uncertainty, nor where there are the same grounds for serious apprehension, because of difficulties in adjusting rights in this case.

There are many cases where the doctrine of laches has been applied to sustain a municipal government where the organization, as attempted, was illegal. Much importance is attached by appellant to the fact that in this case the act serving as a basis for the annexation is absolutely void, and a distinction is drawn between proceedings where they are irregular, merely, and where they are void. The case of *State v. Leatherman*, 38 Ark. 81, is perhaps as directly in point on the particular question as any we have noticed. It involved a consideration of the legality of the establishment of Arkansas City, in that state. In Arkansas such corporations are established on the order of court, and it was found that the court making the order had no jurisdiction to make it, and as to that branch of the case the court said, "There was no jurisdiction, and the order was void." The court then proceeded to the consideration of the question we are now considering, and, after detailing some of the consequences to result from a judgment avoiding the corporation, it is said in the opinion, speaking of that city, with others, probably organized under similar orders, "To declare them all null, after long acquiescence on the part of the state, would open a very Pandora's box of litigation, and produce incalculable hardship and confusion." In the

same connection the court further said, "This impels
us to the broader fields of inquiry, whether this court,
in view of justice, equity and the security of titles, can
find, in recognized principles of law, sufficient warrant
for refusing its aid in opening the floodgates of unmiti-
gable evil." The question was, in that case, presented
on a demurrer to the answer, the action being by infor-
mation in the nature of *quo warranto,* as in this case.
It may also be said that the information was presented
by the attorney general in behalf of the public, and not
on the relation of a private prosecutor, as in this case.
The opinion is concluded in these words: "The case
made by the answer shows an acquiescence for nearly
nine years, and in recognition by the governor, county
collector, and the whole of a population now over one
thousand. If the answer be true, the corporation of
Arkansas City should not now be held null and void."
Barring that of time, the same facts are true in this
case; the time here being, before the commencement
of the suit, a little more than four years. In connec-
tion with the thought as to delay on the part of the
public, it may be well to say that our law expressly
authorizes such actions to be commenced by the county
attorney, in the name of the state, and makes it his
duty to do so when directed by the governor, the gen-
eral assembly, or a court of record. The general
assembly has twice convened since the annexation, in
the city affected by the act, the seat of government
being within its limits; and the validity of the corpora-
tion has never been, by it, nor by any public officer,
questioned. These suggestions bear on the fact of a
public recognition of the present corporation. The
Arkansas case cites, and we refer to, *Jameson v.
People,* 16 Ill. 257. That case, also, was *quo warranto,*
in behalf of the state, to oust the officers of the town
of Oquaka, because of illegality in the organization of
the town. The claimed illegality was an irregularity

in the manner of voting on the question of incorporating. The validity of certain bonds issued by the town depended on the existence of the corporation. The question was presented by a demurrer to defendant's pleas, corresponding to our answer, in which it was made to appear that for more than four years the corporation had been recognized by the legislature in its acts; had exercised the powers and franchises conferred on such corporations by law; had levied and collected taxes, made contracts, and incurred liabilities, and passed and enforced ordinances. The supreme court declined to consider the matter of irregularity in voting and sustained the corporation alone on the grounds of the averments of the answer or pleas; and, while it attached much importance to the subsequent acts of the legislature in recognition of the corporation, it added, after detailing some consequences to result: "Municipal corporations are created for the public good,—are demanded by the wants of the community; and the law, after long-continued use of corporate powers, and the public acquiescence, will indulge in presumptions in favor of their legal existence. * * * It would seem incompatible with good faith, and against public policy, although irregularities may have intervened in the organization of the town, now to hold that it was not a body corporate. We do not think the law requires us to do so." We realize the dissimilarity of the case, in some respects, from the one under consideration; but at the same time, in its reasoning and conclusions, it sustains the principle that laches may overcome legal defects in such organizations. *People v. Maynard*, 15 Mich. 463, is *quo warranto*, and the case involved the validity of a county organization which was held void, as we understand, by a majority of the court, on constitutional grounds. The court in that case says: "Inasmuch as the arrangement there indicated had been

acted upon for ten years before the recent legislation, and had been recognized as valid by all parties interested, it cannot now be disturbed. Even in private associations, the acts of parties interested may often estop them from relying on legal objections which might have availed them if not waived. But in public affairs, where the people have organized themselves, under color of law, into ordinary municipal bodies, and gone on, year after year, raising taxes, making improvements, and exercising their usual franchises, their rights are properly regarded as depending quite as much on the acquiescence as on the regularity of their origin, and no *ex post facto* inquiry can be permitted to undo their corporate existence. Whatever may be the rights of individuals before such acquiescence, the corporate standing of the community can be no longer open to question." The case cites *Rumsey v. People*, 19 N. Y. 41, and *Lanning v. Carpenter*, 20 N. Y. 447. Mr. Cooley, in his work on Constitutional Limitations (page 312, 4th Ed.), says: "In proceedings where the question of whether a corporation exists or not arises collaterally, the courts will not permit its corporate character to be questioned, if it appears to be acting under color of law, and recognized by the state as such. * * * And the rule, we apprehend, would be no different if the constitution itself prescribed the manner of incorporation. Even in such a case, proof that the corporation was acting as such, under legislative action, would be sufficient evidence of right, except as against the state, and private parties could not enter any question of regularity. And the state itself may justly be precluded, on principles of estoppel, from raising any such objection, where there has been long acquiescence and recognition." This, it is true, is a direct proceeding by the state. And, while the language used is applied in part to collateral proceedings, it seems also to include actions by the state directly.

The learned writer sustains this text by a reference to *People v. Maynard, Rumsey v. People,* and *Lanning v. Carpenter, supra.* It will be seen that importance is given to the fact that the defective organization takes place under color of law. Nothing less can be said of the annexation in this case than that it was made under color of law. "Color of law," does not mean actual law. "Color," as a modifier, in legal parlance, means "appearance as distinguished from reality." Color of law means "mere semblance of legal right." Kin. Law Dict. & Gloss. In some of the cases the defects as to organization have been spoken of as irregularities, because of which appellant thinks the cases not applicable, because this is a void proceeding. The term "irregularity" is oftener applied to forms or rules of procedure in practice than to a nonobservance of the law in other ways, but it has application to both. It is defined as a "violation or nonobservance of established rules and practices." The annexation in question was a legal right under the law, independent of the act held void. It was not a void thing, as if prohibited by law. The most that can be said is that the proceeding for annexation was not the one prescribed, but it was a violation or nonobservance of that rule or law. It seems to us that the proceeding is no less an irregularity than in the cases cited.

Importance is attached to the fact that the statute fixes the time in which a suit may be brought in such a case at five years. Notwithstanding the analogy between the law by which a right of action is limited, and that of an estoppel, where time is an ingredient, it has never been held that the time in the two cases is the same. The former goes to the right to maintain or prosecute the action, and the latter to a right of recovery. The one is determined by arbitrary date, without a reference to consequences,

while the other is applied only to deny relief when, because of neglect or wrong, a party has forfeited a right he might otherwise possess. The application of the rule of estoppel cannot be made to depend on a particular date. In one case a time much shorter than the period of limitation would be sufficient to invoke the rule, while in another it will be much longer. It is not to be denied but that there are very many cases where legislative acts have been adjudged unconstitutional, and hence void, where rights and interests acquired under and because of them have been defeated; and this is true where, between the enactment and the judgment, long time has intervened. In *U. S. v. Beebe,* 127 U. S. 338 (8 Sup. Ct. Rep. 1083), the action was to set aside a patent for land obtained by fraud, and in the opinion it is said. "The principle that the United States are not bound by any statute of limitations, or barred by any laches of their officers, however gross, in a suit brought by them, as a sovereign government, to enforce a public right or to assert a public interest, is established beyond all controversy or doubt." Appellant cites the case, and also *U. S. v. Insley,* 130 U. S. 263 (9 Sup. Ct. Rep. 485), to the same effect. It is then said that in this case the state is seeking to assert a public interest, in that it is aimed at a "usurpation by a municipal corporation of powers not conferred by a valid law." If that is the purpose of the suit it will be realized; for we hold, in as explicit terms as we can command, that the act is inoperative to confer upon the defendant corporation any power or rights whatever. Had the act never been passed, and the same method for annexation been adopted, with the same conditions as to recognition, acquiescence, delays, and public and private interests involved, the same conclusion would result; and hence the act is without the least significance, nor have we given it a shadow of bearing, except in so far as it may have

served as a color of law inducing the proceeding for annexation. But, aside from this, the record in no way indicates a public interest to be subserved by a judgment avoiding the present corporate existence. Not one of the sixty thousand or more inhabitants of the city as now constituted makes a complaint, nor does it appear but that all are entirely satisfied with the change that has been made. The relator, but for whom the cause would not be in court, is not a resident of the city; but he is the owner of land of the assessed valuation of eighty dollars, giving him the legal right to institute the proceedings. He in no way claims that he is injured by the change, or is likely to be. The judgment of ouster against the city is claimed as a naked legal right. Had it been exercised with promptness, after the power was assumed by the city, we do not see why he should not have had his judgment. A thought is suggested that the delay was to permit the authorities to act. With the rapid changes made after the passage of the act (the new government being in operation in April, 1890), the tendency, as to results, was manifest; and it was apparent that to avoid great and important changes, involving many and large interests, action should be taken at once. Much less time than was taken was sufficient to apprise the relator that others did not intend to act. The way of inquiry was open to him to know the facts, if he desired to know them, and, in view of the situation, promptness was demanded.

Appellant makes a comparison of the cases as to the time intervening between the adoption of the law and judgment, where laches were claimed as an estoppel. One case that we have cited is the same as this one, while in the others the time is longer. The time that will justify an estoppel, as we have said, varies with the cases; depending on what are the facts, and what is to be apprehended. Greater prejudice

may result from a delay of one year in some cases than from ten or twenty years in others. In our examination we have not found a case in which, with many more years of delay, the consequences to be apprehended from a judgment of ouster were as great as in this case.

We are not unmindful of the fact that the act in question attempts to extend the limits of the city by its own operation, instead of permitting it to be done, but we do not see that such fact should change the conclusion. The conditions out of which arise the necessity for the rule we apply are not the results of the enactment alone, but of the things done by the people relying upon it. By the act it is said that the limits of such cities "are hereby extended," and that, as to corporations in the outlying territory, it provides in terms that they shall "cease and determine." The people, in making the change, acted upon what purported to be fixed conditions; and these facts strengthen the equitable claim of the city that it should not be disturbed, at the instance of the state simply asserting the invalidity of its authority.

Finally, it may be said that, aside from the necessity of maintaining the integrity of the constitution against infractions from legislative action, there is not a reason suggested for, or a benefit anticipated from, the judgment sought in this proceeding. Such a judgment would disrupt the present peaceful and satisfactory arrangement of all the people of the city, as to its corporate existence, without a benefit, so far as we know, to any person. The law does not demand such a sacrifice for merely technical reasons. In fact, the constitutional vindication is complete with the declaration that the act is absolutely void. The judgment of the district court is *affirmed.*