109   169
128   334

MARY H. NEWLON    v.    THE INDEPENDENT DISTRICT OF MONTROSE, Appellant.

**Transferring Part of School District:** FORMAL ACTION BY COUNTY SUPERINTENDENT AND SCHOOL BOARDS. Under Code 1873, section 1797, providing that where, by reason of natural obstacles, a portion of the inhabitants of a school district cannot, with reasonable facility, enjoy school advantages in their township, the county superintendent, with the consent of the directors of such district, may attach such part of the township to an adjoining township, and the order therefor shall be transmitted to the secretary of each district, and be by him recorded, and the proper entry made on the plat of the district, a county superintendent called a meeting of the school boards of adjoining districts, who entered into an agreement, changing the boundary line between them, at which meeting the superintendent was present, and joined in the action taken, though his name was not mentioned in the agreement, and the boards promised to give notice to the secretary of each district, but the superintendent gave notice to the auditor of the county. *Held*, a substantial compliance with the statute, and that the transfer was valid.

ATTACHING PART OF INDEPENDENT DISTRICT TO TOWNSHIP. Code 1873, section 1797, provides that where, by reason of natural obstructions, a portion of the inhabitants of any school district cannot enjoy school advantages in their township with reasonable facility, the county superintendent may attach such part of said township to an adjoining township; and section 1806, providing for the government of independent school districts, declares that they shall be governed by the laws enacted for the regulation of township districts, as far as applicable. *Held*, that where, by reason of natural obstructions, the inhabitants of a portion of an independent school district could not enjoy school advantages therein, the county superintendent was authorized to attach such portion of the district to another district in the same township.

ESTOPPEL. Where the owner of property transferred from one school district to another, under Code 1873, section 1797, authorizing such transfer for the greater convenience of the inhabitants of

the portion transferred, acquiesces in the transfer, recognizes it as valid, pays taxes assessed in the district, and votes there, he is estopped to question the validity of the transfer.

PRESUMPTION OF REGULARITY: *Appeal.* Where a county superintendent attached part of an independent school district to another district in the same township. under Code 1873. section 1797, in order that its inhabitants might enjoy school facilities of which they were deprived by natural obstructions, the burder of proof of insufficient grounds therefor is on the party objecting to the change, and, in the ab ence of such proof, it will be presumed, on appeal, that the proceedings were regular and the grounds sufficient.

*Appeal from Keokuk Superior Court.*—HON. RICE H. BELL, Judge.

SATURDAY, OCTOBER 7, 1899.

ACTION in equity to restrain the collection of certain taxes, to have the action of certain boards of directors respecting the transfer of territory declared void, and for general equitable relief. There was a hearing on the merits, and a decree in favor of the plaintiff, from which the independent district of Montrose appeals.—*Reversed.*

*J. P. Kennedy* and *A. Hollingsworth* for appellant.

*F. M. Ballinger* for appellee.

ROBINSON, C. J.—This action was commenced by Martin Spring, who was then the owner of tracts of land in Montrose township, Lee county, which contained an aggregate of one hundred and twenty-one acres. In the year 1896 the board of supervisors of Lee county levied for school purposes a tax of twenty-two and one-half mills on each dollar of the assessed valuation of property in the independent district of Montrose and at the same time levied for similar purposes a tax of five and one-half mills on each dollar of the assessed valuation of property in independent district No. 6 of Montrose township, also known as the "Nashville District." The property of Spring was assessed as within the Montrose dis-

trict, but he claimed in the petition that it should have been assessed as a part of the Nashville district, and the relief demanded was that the collection of the tax levied on account of the Montrose district be enjoined, and that the land be adjudged to be within the jurisdiction of the Nashville district. The county of Lee and its treasurer were joined with the Montrose district as defendants. After this action was commenced, Mary H. Newlon purchased the property of Spring, referred to, and has been substituted as plaintiff.

In the year 1887 action was taken by the county superintendent and the boards of directors of the two districts to so change the boundary line between the two districts as to transfer the land of Spring and of others from the Nashville to the Montrose district. In the year 1889, and from that time until this action was commenced, Spring's land was assessed and taxed as in the Montrose district, and the taxes were paid by Spring, and so far as is shown, without objection on his part. It appears that, by reason of natural obstacles, it was more convenient for the children of Spring and of some of his neighbors, including a Mr. Singer, to attend school in the Montrose, rather than in the Nashville, district, and they were sent to the Montrose district school for some time before the action of the superintendent and boards of directors was taken, but some difficulty was experienced in making satisfactory adjustment of the expenses occasioned by that practice. Application was made to the county superintendent for relief, and a joint meeting of the two boards was called, and an agreement was entered into, a copy of which is as follows: "Montrose, Iowa, Dec. 3, 1887. We, the undersigned members of the school board of Montrose and Nashville districts, to joint meeting convened, by unanimous vote determined the following as the revised boundary line between the two districts aforesaid; that is, the north section line of sections 13 and 14, Montrose township, extending from Grand avenue, in Montrose, easterly to the river. All other boundary

lines to remain as before this concurrent action." This was signed by the president and secretary of each board. The meeting of the two boards was called by the county superintendent, and he was present at the meeting and advised and joined in the action taken. It is claimed that the meeting was called at the request of Spring. That is not clearly shown to have been true, but Singer asked the superintendent to take some action which would give himself, Spring, and others relief, after consulting with Spring in regard to what should be done, and the meeting was called in consequence of what Singer said to the superintendent. We are fully satisfied that what was done was approved by Spring. After the action was taken, he repeatedly stated to assessors that his land was in the Montrose district, and sent his children to school and voted at school elections in that district. It does not appear that he objected in any manner to what was done by the boards and superintendent, nor questioned its validity, until this action was commenced. It is conceded that his residence was much nearer to the school-house in the Montrose than it was to that in the Nashville district, and that it was much more convenient to send his children to the Montrose school, and that they there had better educational advantages than the Nashville school afforded. The transfer of his property to the Montrose district was advantageous to both districts, for the reason that the cost to the Nashville district of the tuition paid to the Montrose district on account of Spring's children was greater than the taxes he paid in the Nashville district, but less than his taxes in the Montrose district. The change in the boundaries of the two districts was attempted under section 1797 of the Code of 1873, which provided that, "in case where, by reason of streams or other natural obstacles, any portion of the inhabitants of any school district cannot, in the opinion of the county superintendent, with reasonable facility enjoy the advantages of any school in their township, the said county

superintendent, with the consent of the board of direct-
ors of such district as may be affected thereby, may attach
such part of said townships to an adjoining township,
and the order therefor shall be transmitted to the sec-
retary of each district, and be by him recorded in his records,
and the proper entry made on the plat of the district." The
action taken by the superintendent and boards was certainly
not a formal compliance with that section, but the agreement
into which the boards entered should certainly be given the
force and effect of a consent on their part to the change
of boundary attempted. The county superintendent is not
mentioned in the agreement, but that what he and the boards
of directors did was intended to attach the land in ques-
tion to the Montrose district cannot be questioned. He tes-
tifies that he, with the consent of the two boards, "did attach
to said Montrose independent school district certain lands,
including the homes of Messrs. Henson, Martin, Spring, and
Singer," and that the boards promised him to give the sec-
retary of each district such notification of the transfer as
would enable him to make a proper record of it. The super-
intendent further testifies that he agreed with the boards to
give the proper notice of the change to the auditor of Lee
county, which he did orally and in writing. He also states
that the transfer was made because of natural obstacles to
the attendance at the Nashville school of the children who
resided in the territory which he attempted to transfer. We
are of the opinion that, if section 1797 of the Code of 1873
applied, what was done by the superintendent and the
boards of directors was sufficient to make effectual the change
of boundary attempted, notwithstanding some irregu-
larities in the way in which it was done. The plain-
tiff insists that it was not sufficient, for the reason
that the section in terms applied only to cases where a part
of one township was to be attached to an adjoining township,
while the districts in question were both in one township.
If there had been no other provision of law applicable to

this case, the claim of the plaintiff would be well founded; but section 1806 of the Code of 1873 referred to independent districts, and provided that they should "be governed by the laws enacted for the regulation of district townships, so far as the same may be applicable." It was intimated in *Eason v. Douglas,* 55 Iowa, 390, although not decided, that the boundaries of independent districts might be changed by the county superintendent under the provisions of sections 1797 and 1806, and we are of the opinion that such was the law, and that the change in the boundaries attempted was authorized by those sections.

II. It is said that the defendants have failed to show that such natural obstacles existed as authorized the change of boundary attempted, and that the children for whose benefit it was made did not have reasonable facilities for attending school in the Nashville district. The answer to these claims is that the law authorized such a change as that attempted on the grounds on which it was made, and it must be presumed, until the contrary is shown, that the proceedings were regular and the grounds sufficient. Some irregularities already mentioned are shown, but the plaintiff has failed to show that the ground upon which the change was made was insufficient, and the burden was on him to do so. Whether the legality of the change could, in any event, have been assailed successfully by such an action as this, is a question we do not determine.

III. Section 1797 provided that the order attaching territory in the manner attempted should be transmitted to the secretary of each district, and be by him recorded in his records, and the proper entry be made on his plat of the district. It does not appear that any order in writing was ever made by the superintendent, but a verbal order was made in the presence of the boards of directors, and presumably of the secretaries, which all parties in interest treated as sufficient. It is not shown that the records and entry required by law were not made. Moreover, Spring acquiesced in what was done, and by his acts recog-

nized it as valid until this action was commenced, and it is now too late for him or his grantee to question its validity. See *State v. City of Des Moines,* 96 Iowa, 521; *School Dist. No. 1 v. Union Schol Dist. No. 1,* 81 Mich. 339 (45 N. W. Rep. 993); *Sherry v. Gilmore,* 58. Wis. (17 N. W. Rep. 252); *City of Logansport v. La Rose,* 99 Ind. 117; *Black v. Town of Brinkley,* 54 Ark. 372 (15 S. W. Rep. 1030), *Graham v. City of Greenville,* 67 Tex. Sup. 62 (2 S. W. Rep. 742); *South Platte Land Co. v. Buffalo County,* 15 Neb. 605 (19 N. W. Rep. 711); *Seward v. Rheiner,* 2 Kan. App. 95 (43 Pac. Rep. 423). The superior court found that the territory in question had not been transferred to the Montrose district, and enjoined the collection of the tax in question. It follows from what we have said that the decree was erroneous, and it is REVERSED.