LEHIGH SEWER PIPE & TILE Co., LEHIGH PRODUCTS Co., CAMPBELL BRICK & TILE PLANT, Appellants, v. THE Incorporated Town of LEHIGH, J. A. WILLIAMS, Mayor of said town; F. F. NELSON, GEORGE EDINGTON, B. J. LANG, W. J. POST and J. F. SUER, Members of the town council of said town; R. A. DUBOIS, Clerk of said town; and F. F. NELSON, B. J. LONG and J. A. WILLIAMS, members of the election board and judges of the election held on July 6, 1910, and J. W. POST and R. A. DUBOIS, Clerks of said election, Appellees.

**Municipal corporations:** EXTENSION OF LIMITS: REVIEW OF PROCEED-
1 INGS: *Certiorari.* In the absence of fraud the action of a town council or of the electors in extending the limits of the incorporation can not be reviewed by *certiorari,* on the ground that there was no necessity for the extension; hence evidence that the purpose of the extension was to derive revenue from the town, to sell bonds and to increase the indebtedness, was not admissible: Nor in such a proceeding, can there be a recount of the ballots cast on the question of extension.

**Same:** *Certiorari:* ABSTRACT: RETURN: AMENDMENT. It is permis-
2 sible in *certiorari* proceedings to review the action of a town council in extending the limits of the town for defendant to amend the abstract curing an alleged defective description of the territory, and to amend its return by striking out that part

showing that the polls were not opened until after the proper hour.

**Same:** REVIEW OF MINISTERIAL ACTS. *Certiorari* will not lie to review a ministerial act; such as the receiving or rejection of votes by the judges at a municipal election on the question of extending the town limits.

**Same:** MUNICIPAL ELECTIONS: RECORDS. The record of a town council is not conclusive on the question of when the polls of a municipal election were opened; as the same is not the record of the judges and clerks of the election.

**Same:** DEFECTIVE BALLOT: REVIEW: *Certiorari*. *Certiorari* will lie to review the action of an inferior tribunal only when it has acted in a judicial or semi-judicial character, and then only when the act was without jurisdiction or otherwise illegal; it is not the proper remedy for the correction of mere errors, nor of ministerial, administrative or legislative acts; nor to control the discretion of a judicial or semi-judicial body: Thus where the proper officials, in preparing the ballot used at an election on the question of extending the limits of an incorporated town, a purely ministerial act, omitted therefrom a description of the territory to be added, which constituted the only error complained of, and it in no manner prejudiced any elector, *certiorari* was not available for the purpose of vitiating the whole proceeding; but there was an adequate remedy either by injunction or *quo warranto*.

*Appeal from Webster District Court.*—HON. C. E. ALBOOK, JUDGE.

MONDAY, JUNE 10, 1912.

THIS was a certiorari proceeding to review the action of the town council of the incorporated town of Lehigh in extending the limits of said town. The trial court dismissed the petition and plaintiffs appeal.—*Affirmed.*

*Mitchell & Fitzpatrick,* and *Healy & Healy,* for appellants.

*Frank Maher* and *Kelleher & O'Connor,* for appellees.

DEEMER, J.—The incorporated town of Lehigh is in the southern part of Webster county, and prior to the proceedings complained of contained 240 acres. By the extension which is challenged it was made to include 1,440 acres; plaintiffs' property being in the territory added to the town. The proceedings began with the passage of a resolution by the town council on June 6, 1910, which provided that the matter of extension be submitted to the electors at an election to be held on July 6th of the same year, and directed that notice of such election be given as provided by section 615 of the Code. The resolution directed that the question to be submitted should be: "Shall the incorporated limits of the town of Lehigh, Iowa, be extended in the following manner, to wit: Commencing at the north quarter corner of section 7, township 87, range 27, west of the 5th P. M., thence west on the section line to the northwest corner of section 12, township 87, range 28, thence south on the section line to the west quarter corner of section 13, township 87, range 28, thence east on the quarter line to the center of section 18, township 87, range 27, thence north on the quarter line to the starting point so as to include within the area of the incorporated limits of said town all of the said lands located within the limits above described?" Said resolution was put to a vote of said council, which said vote thereon was as follows: "F. F. Nelson, Yes. George Eddington, Yes. B. J. Lang, Yes. J. F. Suer, Yes. W. J. Post, Yes. And said motion and resolution was duly declared adopted."

The notice which was published in the Lehigh Valley Argus, the last of the publications being June 30, 1910, was as follows:

To the electors of the town of Lehigh and to all persons whom it may concern. Notice is hereby given that whereas the town council of the town of Lehigh, Webster county, Iowa, on the 6th day of June A. D. 1910, passed a resolution extending the corporate limits of the

town of Lehigh, in the following manner, to wit: Commencing at the north quarter corner of section 7, township 87, range 27, thence west on the section line to the northwest corner of section 12, township 87, range 28, thence south on the section line to the west quarter corner of section 13, township 87, range 27, thence east on the quarter line to the center of section 18, township 87, range 27, thence north on the quarter line to the starting point and so as to include within the incorporated limits of the said town of Lehigh all of the lands within the above described limits. And, whereas, the said town council of the town of Lehigh, Iowa, fixed the 6th day of July, A. D. 1910, as the time for holding an election on the question for the purpose of voting upon the extension of the incorporated limits as above set forth all such electors and all persons whom it may concern are therefore hereby notified that an election is hereby called in accordance with the law, including the provision of Code section 615 of the Code of 1907, to be held on the 6th day of July, A. D. 1910, in the said town of Lehigh, Iowa, in the Salvation Army building located on Main street of said town of Lehigh, Iowa, and that the question to be voted on at said time will be: 'Shall the incorporated limits of the town of Lehigh, Iowa, be extended in the following manner, to wit: Commencing at the north quarter corner of section 7, township 87, range 27, west of the 5th P. M., thence west on the section line to the northwest corner of section 12, township 87, range 28, thence south on the section line to the west quarter corner of section 13, township 87, range 28, thence east on the quarter line to the center of section 18, township 87, range 27, thence north on the quarter line to the starting point and so as to include within the area of the incorporated limits of said town all of the land located within the lines above described?' You are hereby notified to be present and vote on said question and to govern yourselves accordingly. (Signed) J. W. Williams, Mayor of the Town of Lehigh, Iowa.

Affidavit of publication was duly made showing four consecutive publications. The town council appointed two of their own number and the mayor to act as judges of

election and two others as clerks, and the record of the town council shows the following with reference to the election:

'At a special election held in Lehigh, township of Sumner, county of Webster, state of Iowa, on the 6th day of July, 1910, the polls of said special election were opened at 9:00 o'clock a. m. of said day. That 247 votes were cast at said election, 115 for, 110 against, and 22 defective, and the election was declared carried by a majority of the votes. The judges of the election then proceeded to declare the extension a part of the town of Lehigh.

Some questions are made regarding this return which will be hereafter referred to. The ballots used at the election were in the following form:

"Shall the incorporate limits of Lehigh, Iowa, be extended to include the territory described in the proclamation of the mayor of Lehigh? To vote yes make an X in the square opposite the word 'Yes.' To vote No make an X in the square opposite the word 'No.'

Yes ☐

No ☐ "

It is claimed that of the twenty-two ballots rejected as defective, fourteen were against the extension and eight for; that one man appeared to vote between 8 and 9 o'clock in the morning but could not do so; and that one vote was cast by a man who lived outside the territory. Plaintiff also attempted to show that there was no occasion for extending the limits of the town, and that it was done to take in plaintiffs' large factory for revenue purposes only. Refusal to receive such testimony is made one of the grounds of complaint. It is also contended that the resolution was insufficient, the ballots defective, the selection of judges illegal, the polls were not open at the time required, illegal votes were cast and counted, and legal votes rejected, and that the trial court was in error in permitting defendants to amend their return to the writ, such return being in con-

tradiction of the records made by the town council as to the time of opening the polls.

The proceedings being by certiorari, we may at once eliminate some of the questions argued. There being no fraud charged, it was not permissible in this form of action to review the action of the town council or the electors on the ground that there ·was no necessity for the extension; hence the trial court did not err in rejecting the testimony offered to show that the purpose of the extension as gathered from the conduct of the defendants was to derive a revenue from the town, to sell bonds, and to increase its indebtedness. *Spitzer v. Runyon,* 113 Iowa, 619; *State v. Village,* 112 Minn. 330 (127 N. W. 1118).

1. MUNICIPAL CORPORATIONS: extension of limits: review of proceedings: *certiorari.*

Again, upon such a proceedings as this, there can be no recount of the ballots. *State v. Sundquist,* 137 Wis. 292 (118 N. W. 836); *State v. Village,* 95 Minn. 243 (103 N. W. 1017); *People v. Austin,* 20 App. Div. 1 (46 N. Y. Supp. 526).

The alleged defective description of the territory to be included has been cured by an amended abstract, and it was permissible for the defendants to amend their return by striking therefrom that part showing the polls were not opened until 9 o'clock. As the record now stands, there is no affirmative showing that the polls were not open at 8 o'clock in the morning as the law requires; indeed, the preponderance of the testimony shows that the judges and clerks were present from 8 in the morning until it closed at the regular hour, and that every one who presented himself to vote or who expressed a desire to do so was given opportunity.

2. SAME: *certiorari:* abstract: return: amendment.

It is doubtful if any one outside the proposed territory was permitted to vote. But, however, this may be, there is no showing as to how·he voted, and it is manifest that his

vote alone would not have changed the result. Finally, the

**3. SAME:**
**review of**
**ministerial**
**acts.**

matter of receiving or rejecting votes was purely ministerial, and, of course, certiorari will not lie to review purely ministerial functions. *Lane v. Mitchell,* 153 Iowa, 139. The judges and clerks of election were properly chosen under section 615 and 1093 of the Code of 1897.

The trial court did not err in holding that the record made by the town council as to when the

**4. SAME:**
**municipal**
**elections:**
**records.**

polls were opened, was in conclusion upon the question for the reason that the record of the town council was not the record of the judges and clerks of election, and hence not binding.

As already stated, alleged errors in the description of the territory proposed to be added have been corrected, and the only question left for consideration, if there be any

**5. SAME: defec-**
**tive ballot:**
**review:**
*certiorari.*

with which we may deal in this proceeding, is the insufficiency of the ballot which did not describe the territory to be added except in this way: "The territory described in the proclamation of the mayor of Lehigh." It is conceded that there was but one proclamation, which was duly published as required by law, and that this gave a correct description of the property to be added. But it is argued that, as the statute expressly provides that a description of the territory to be added must be printed upon the ballot, the entire election was invalid because the ballot did not contain this description except by reference, and that the entire proceedings should be annulled. The issue thus presented is a very narrow one, and involves three considerations: (1) Does the statute require that the description be printed upon the ballot itself? (2) Is the statute mandatory? (3) If the ballots were defective, may an interested party have the entire election and all the proceedings annulled by *certiorari?*

By section 615 of the Code Supplement, the boundaries

of a town may be extended upon a vote of the electors after a resolution providing therefor shall have been passed by the town council, which resolution must fix and describe the boundary to the proposed extension. This section also provides for a proclamation by the mayor, "setting forth the exact question to be presented to the electors for determination." Section 642, 1088, and 1171 relate to the conduct of town and city elections, both general and special, and section 1106 of the Code Supplement, among other things, says that:

When a constitutional amendment or other public measure is to be voted upon by the electors, it shall be printed in full upon a separate ballot preceded by the words 'shall the following amendment to the Constitution (or public measure) be adopted?' and upon the right hand margin, opposite these words, two spaces shall be left, one for votes favoring such amendment or public measure, and the other for votes opposing the same. In one of these spaces the word 'yes' or other word required by law shall be printed; in the other, the word 'no' or other word required, and to the right of each space a square shall be printed to receive the voting cross, all of which shall be substantially in the following form:

'Shall the following amendment to the Constitution (or public measure) be adopted?'

(Here insert in full the proposed constitutional amendment or public measure.)

Yes ☐

No ☐

The elector shall designate his vote by a cross mark, thus 'X,' placed in the proper square. . . . Such ballots shall be indorsed and given to each voter by the judges of election, as provided in section eleven hundred and sixteen (1116) and shall be subject to all other laws governing ballots for candidates, so far as the same shall be applicable.

Section 1121 of the Code Supplement contains this provision: "None but ballots provided in accordance with the provisions of this chapter shall be counted."

There are other provisions of law with reference to

referendum votes in townships, school districts, cities, and towns, but none of these seem applicable here, although we may draw some analogies from decisions thereunder. The statutes, so far considered, are mandatory in terms, and seem to provide that the proposition shall be printed upon the ballot, and not left to mere reference. The decisions from other states generally hold such provisions mandatory. *Griffin v. Tucker*, 51 Tex. Civ. 522 (119 S. W. 338); *Sweeney v. Bigelow*, 202 Mass. 539 (88 N. E. 917); *McLaughlin v. Summit Hill*, 224 Pa. 425 (73 Atl. 975). But in construing a somewhat similar statute we said:

Section 2749 (Code 1897) of said chapter enumerates the general powers of the voters assembled at the annual meeting of the school district, and among other powers given by said section is the power to submit to the voters any proposition authorized by law, and to provide in the notice for the annual meeting for submitting such proposition. It is also provided therein that all propositions shall be voted upon by ballot, and that such ballot shall state the proposition. The only substantial difference between the notice of the submission of the proposition and the ballot which was voted at the annual meeting is to be found in the omission from the ballot of the limit of $4,000 contained in the notices, and it is upon this difference that the appellants base their contention that the ballot was insufficient. It is undoubtedly the rule that the acts of the board must in all essential particulars comply with the statute; but it does not necessarily follow that the ballot must contain a recital of every preliminary step theretofore taken, or that it must alone furnish complete information as to the amount which it was proposed to raise for the building of the schoolhouse. It will be noticed that the proper resolution had been passed by the board submitting the question to the vote of the electors of the district, and that the proposition to be voted upon was, in fact, included in the notice of the meeting. Every step necessary to submit the proposition to the voters in a legal way had been taken preceding the ballot, and the ballot itself must of necessity relate to such prior action, and must be considered therewith. Section 2749 provides no specific form of ballot,

but only requires that it shall fairly and intellectually present the question that is to be voted upon. It is a general rule that in submitting a question of issuing bonds a substantial compliance with the statute is sufficient. 11 Cyc. 557. If the voter knows or can readily ascertain the full scope and meaning of the proposition by reference to other papers and proceedings, it is sufficient. In other words, the language of the ballot is to be construed in the light of facts connected with the election. *Rock v. Rinehart,* 88 Iowa, 37.

In *Hawes v. Miller,* 56 Iowa, 395, the form of the ballot used in a county seat election was in question, and it was there said: 'If the ballot expressed such intentions beyond a reasonable doubt, it is sufficient without regard to technical inaccuracies or the form adopted by the voter to express his intentions. Of course, the language of the ballot to be construed in the light of all facts connected with the election, and the subject contemplated in the proposition submitted to the electors, and the like, may be considered to aid in disclosing the intention of the voter.' In this case, as we have seen, the preliminary resolution placed the limit of the bonds at $4,000, and the notice placed the same limit upon the amount of the bonds to be voted upon; and, while the ballot failed to place the same limit on the amount of the bonds issued, it refers to the notice and resolution, and it is clear that the voters fully understood that such issue would not exceed $4,000. We think the trial court properly held the ballot in substantial compliance with the requirement of the statute. (*Calahan v. Handsaker,* 133 Iowa, 622).

In this connection it should be remembered that for the defects complained of the electors were in no manner responsible. These were due to the officers in charge of the election, and the general rule as to such matters has thus been stated: "As to the form of ballot used, the statute says that the voter shall designate his vote by writing the word 'Yes' or 'No' in an appropriate place on the ballot. The form prepared for the electors did not strictly follow the law, in that the words 'Yes' and 'No' were printed upon the ballots, and the voter was to indicate his choice. These ballots were prepared by the officials of the school

township, and not the electors, and, so long as none of the
voters were misled thereby, technical defects in the form
of the ballots should be disregarded. This part of the
statute should be regarded as directory only. Notices were
posted at the place of meeting, directing the manner of vot-
ing by marking crosses in the squares, and, as this follows
the custom now and for a long time prevailing at general
elections in this state, no one could have been deceived by
the form of ballot used. Where mistakes of officials, and
not of electors, are relied upon, prejudice must be shown
in order to defeat an election fairly held. *State v. Bern-
holtz,* 106 Iowa, 157; *Cook v. Fisher,* 100 Iowa, 31. There
is another case bearing upon this proposition which neither
counsel nor we have been able to find; but it holds that
there was no such defect in the ballot used as to defeat the
election. The departure from the statute in that case was
much greater than in this one." *Kinney v. Howard,* 133
Iowa, 94. We also quote the following from *Cook v.
Fisher,* 100 Iowa, 37, as applicable here: "Unless the
law is clearly mandatory, or in some way declares the con-
sequences of a departure from its provisions, the court
ought not to defeat the will of the people, when fairly
expressed, because of some technical error or mistake in
the form of the ballot; and in this case there is no claim or
suggestion of fraud on the part of any one, or that the
returns now in the possession of the secretary of state do
not correctly represent the will of the people as expressed
at the polls." There is an affirmative declaration in our
statute that none but official ballots shall be used or counted,
and that it is mandatory. There is, however, no affirmative
declaration that official ballots, corrected as these were, shall
therefore cease to be official ballots, nor that such ballots,
when legally cast, shall not be counted. See, also, the cases
cited in each of these opinions. No prejudice will be pre-
sumed in such cases as this and there is absolutely no
testimony that any one of the electors was deceived by the

failure to describe upon the ballot the exact territory, which it was proposed to include.

But a more serious question than any so far considered is this: Conceding arguendo that the statutes are mandatory and the ballots defective, is *certiorari* the proper remedy whereby to challenge the proceedings? This extraordinary remedy will lie "when authorized by law and in all cases where an inferior tribunal, board or officer exercising judicial functions is alleged to have exceeded his proper jurisdiction or is otherwise acting illegally and there is no other plain, speedy and adequate remedy." Code, section 4154. Such remedy will not lie unless the action complained of it either judicial or semi-judicial in character, and then only when the board or tribunal is without jurisdiction or is otherwise acting illegally. It does not lie to correct mere errors, nor is it available if the acts complained of are ministerial, administrative, or legislative in character. Nor can it be used to control the discretion of a judicial or semi-judicial tribunal. It is true, of course, that the town council acted in a *quasi* judicial capacity in determining whether or not it would submit the matter of extension to the electors, and it is also true, no doubt, that, unless it passed the necessary preliminary ordinance or resolution and gave the notice required, it was without jurisdiction to proceed at all. *Moore v. Perry,* 119 Iowa, 423. But there being no defects in either the resolution or the notice, and no valid complaint of anything except the ballot, it would seem that *certiorari* will not lie to annul the entire proceeding because in the mere ministerial act of preparing the ballot a mistake occurred, particularly where, as in this case, the mistake was wholly without prejudice. These views find support in *People v. Austin,* 20 App. Div. 1 (46 N. Y. Supp. 526); *State v. McIntosh,* 95 Minn. 243 (103 N. W. 1017); *Tiedt v. Carstensen,* 61 Iowa, 334; *Polk Co. v. Dist. Court,* 133 Iowa, 710; *Brockway v. Board,* 133 Iowa, 293. Assuming that the ballots were

void, and for that reason the election illegal, plaintiff had a plain, speedy, and adequate remedy by injunction. *Ind. Dist. v. Taylor,* 100 Iowa, 617; *Jordon v. Hayne,* 36 Iowa, 9; *Darling v. Boesch,* 67 Iowa, 702; *Molyneaux v. Molyneaux,* 130 Iowa, 100. Doubtless an action of *quo warranto* might also be brought under the rules announced in *State v. Ry. Co.,* 135 Iowa, 694; *State v. Alexander,* 129 Iowa, 539; *State v. Ind. Dist.,* 29 Iowa, 264. A recent text-writer has said that the only remedies whereby to test the validity of annexation proceedings are injunction or an action of *quo warranto.* 1 McQuillin on Municipal Corporations, section 288, citing among other cases: *People v. York,* 247 Ill. 591 (93 N. E. 400); *McCain v. City,* 128 Iowa, 331; *East Dallas v. State,* 73 Tex. 371 (11 S. W. 1030); *People v. Ontario,* 148 Cal. 625 (84 Pac. 205); *State v. Des Moines,* 96 Iowa, 521; *Delphi v. Startzman,* 104 Ind. 343 (3 N. E. 937).

Our conclusions on the whole case are in harmony with those of the trial court, and its judgment must be, and it is—*Affirmed.*