STATE OF IOWA, Appellee, v. C. G. LINSIG, Appellant.

**SUNDAY:** Work and Labor—Criminal Prosecution—Information—
1 **Sufficiency.** An information under the statute prohibiting non-necessary and non-charitable work on Sunday, need not allege that the alleged violation was "to the disturbance of the public peace."

**STATUTES:** Construction—Preambles, Etc. Principle recognized
2 that resort may be had to the preamble or title or chapter headings of a statute, in order to ascertain the legislative intent, only when the language of the statute is ambiguous or doubtful.

SUNDAY: Works of Necessity, Etc.—Barbering. The ordinary work
3   or employment of a barber is not a work of charity or necessity
within the meaning of the so-called Sunday statute. (Sec. 5040,
Code, 1897.)

CONSTITUTIONAL LAW: Sunday Laws—Works of Necessity and
4   Charity. Statutes prohibiting non-necessary and non-charitable
work on Sunday are constitutional. (Sec. 5040, Code, 1897.)

SUNDAY: Works of Necessity, Etc.—Validity of Statute. A statute
5   prohibiting all non-necessary and non-charitable work on Sunday
is not invalid because of the all-inclusive character of the language
used, and a consequent failure to enumerate each and every avoca-
tion of the human family which is prohibited.

*Appeal from Scott District Court.*—M. F. DONEGAN, Judge.

TUESDAY, NOVEMBER 21, 1916.

AN information was filed before a justice of the peace
in Scott County, charging defendant with having committed
a "breach of the Sabbath, in that, upon Sunday, the 10th
day of October, 1915, at Davenport in said county, he per-
formed work and labor in pursuance of his avocation as a
barber, and did then and there publicly conduct and operate
a barber shop, and in pursuit of such occupation did then
and there" shave the face of a living man, such labor not
being a work of necessity or charity—contrary to law. On
this information, a warrant was issued, and the defendant
arrested. Being brought before the justice, defendant entered
a plea of guilty, whereupon the justice entered a judgment
against the defendant that he pay a fine of $1 and costs.
On the same day, defendant filed an appeal bond, which was
approved, and transcript and papers were filed in the dis-
trict court. Appearing in the district court, defendant de-
murred to the information, on the ground that it did not
substantially conform to the requirements of the Code, and
that it contained matter which, if true, would constitute a
bar or legal defense to the prosecution. The demurrer being
overruled, defendant refused further to plead, and the pros-

ccutor moved for judgment against him. The record is obscure upon this point, but we infer that the court proceeded as upon a plea of not guilty, the parties and counsel agreeing to waive a jury and go to trial to the court. The hearing resulted in the holding of the defendant guilty, and the assessment against him of a fine of $1 and costs taxed at $10.15, and that he be committed to jail until the judgment was performed. A motion in arrest, also for a new trial, was overruled, and defendant appeals.—*Affirmed.*

*Andrew L. Chezem,* for appellant.

*George Cosson,* Attorney General, and *John Fletcher,* Assistant Attorney General, for appellee.

WEAVER, J.—Counsel for appellant premises his argument with a statement of 34 several propositions of law. We shall make no attempt to set them out *seriatim.* Most of them are elementary, are not disputed by the State, and have little, or at most remote, application to the question presented by the record. Sifting the wheat from the chaff, the really pertinent propositions are as follows:

I.   Appellant claims that the statute, when properly construed, forbids Sunday labor only where the act charged offends or disturbs the peace and good order of society. In support of this proposition, we are cited first to the fact that Chapter 12 of Title XXIV of the Code, in which the so-called Sunday law is found, bears the title or heading, "Of Offenses against the Public Peace." It is then argued that this legislation is, in substance, identical with the Sunday statute of Illinois, where the courts have held it necessary, in order to convict of a violation of such law, that the prosecution must charge and prove that the alleged act of the accused was done to the disturbance of the public peace and good order.

1. SUNDAY: work and labor: criminal prosecution: information: sufficiency.

The Sunday statutes of the° several states are varied in both form and substance. Some forbid in general terms all Sunday labor and business, except works of necessity and

charity; others seem to confine the prohibition to work done in pursuit of one's ordinary vocation; and others make unlawful only such labor or employment as disturbs the peace and good order of society. The section of our statute, Code Section 5040, with violation of which the appellant was charged, is as follows:

"Section 5040. If any person be found on the first day of the week, commonly called Sunday, engaged in carrying firearms, dancing, hunting, shooting, horse racing, or in any manner disturbing a worshiping assembly or private family, or in buying or selling property of any kind, or in any labor except that of necessity or charity, he shall be fined not more than five nor less than one dollar."

It is found, as we have seen, in Code, Title XXIV, relating to "Crimes and Punishments," and Chapter 12, entitled, "Offenses against the Public Peace." The Illinois statute to which counsel calls our attention is as follows:

"Whoever disturbs the peace and good order of society by labor (works of necessity and charity excepted), or by any amusement or diversion on Sunday, shall be fined not exceeding $25." Hurd's Stat., p. 926, Par. 261, Ch. 38.

But for the apparent earnestness of counsel in his insistence that these provisions are alike in substance and effect, and that decisions of the Illinois court interpreting and applying the latter are authority which we ought to follow in construing the former, we should take it for granted that the difference between these statutes is so wide and so material as to require no more than their reading for its immediate recognition. The Iowa statute inhibits *any* labor (a phrase which is here the equivalent of *all* labor) on the first day of the week. The Illinois statute limits its inhibition to the disturbance of the peace and good order of society. Practically speaking, the only identity between the two acts is in the exemption in favor of works of necessity and charity. But counsel seek to bridge over this manifest difficulty by saying, in effect, that we must read into our statute above

quoted the heading or title to the chapter in which it is found, and give the enactment the same effect as if the words "to the disturbance of the public peace" had been inserted therein, following the word "labor" or the word "charity." To do so would be to violate every well-established canon of statutory interpretation. The first and most imperative rule is that, if the language of an enactment is clear, unambiguous and certain, it is not open to construction, and must be given effect according to its terms. *Boudinot v. United States (The Cherokee Tobacco)*, 11 Wall. 616 (20 L. Ed. 227). It is not

2. STATUTES: construction: preambles, etc.

competent for the court to resort to forced or subtle reasoning for the purpose of either limiting or extending the effect of a statute. It should be read according to the natural and obvious import of the language. *United States v. Temple*, 105 U. S. 97 (26 L. Ed. 967). It is only where the language of the statute is ambiguous or doubtful that the court may look to the preamble or title or heading to ascertain the legislative intent. *Lederer v. Colonial Investment Co.,* 130 Iowa 157, 158; *Hadden v. Barney,* 5 Wall. 107 (18 L. Ed. 518); *Goodlett v. Louisville & N. R. Co.,* 122 U. S. 391 (30 L. Ed. 1230); *United States v. Oregon & C. R. Co.,* 164 U. S. 526 (41 L. Ed. 541); *Price v. Forrest,* 173 U. S. 410 (43 L. Ed. 749). The language of Code Section 5040 is neither obscure nor ambiguous nor doubtful. It makes it unlawful to do *any* labor on Sunday, save only works of charity or necessity. Neither in terms nor by remote inference is there any limitation of its effect, to work which disturbs or tends to disturb the public peace. To go beyond that language and add the limitation contended for by appellant would be a marked example of gross judicial usurpation of legislative functions. The exception provided by the statute for works of necessity and charity is made in somewhat general terms, without specifying what works are of that character. It could not be otherwise; for the demands of necessity and charity are ever varying, and the same act which may be a work of necessity

or charity on one occasion may not be properly so called on another occasion—its character in that respect depends upon the peculiar circumstances in each case. If the accused person makes the point that the work done by him, was an act of charity or necessity, the record may or may not be such as to carry the question to the jury. It has been held as a matter of law that the ordinary work or employment of a barber is not a work of charity or necessity within the meaning of the Sunday law (*State v. Frederick*, 45 Ark. 347; *Commonwealth v. Waldman*, 140 Pa. 89, 98; *State v. Granneman*, 132 Mo. 326); and we think the rule so established is too clearly right to call for argument.

3. SUNDAY: works of necessity, etc.: barbering.

Without further discussion at this point, we think it is enough to say that we hold that the labor prohibited by the statute is neither expressly nor impliedly limited to such as disturbs or tends to disturb the public peace; and it was not necessary to the sufficiency of the information filed against the appellant that it should have alleged any breach of the peace or good order of society on his part.

II. It is not necessary for the court to consider or designate the particular purposes or reasons influencing the mind of the legislature in enacting this statute. It is enough to know that such regulation is one which may be lawfully and constitutionally enacted, and this has been settled over and over again by our courts of last resort, both state and national. *State v. Petit*, 74 Minn. 376; *Petit v. Minnesota*, 177 U. S. 164; *Breyer v. State*, 102 Tenn. 103; *People v. Havnor*, 149 N. Y. 195. Neither is it necessary that the statute, in prohibiting all labor, should have particularly specified labor done by a barber in shaving the face of a fellow being, or in opening and conducting a barber shop. If it was intended to classify the various kinds of labor, prohibiting some and excepting others, it may be that a specific enumeration com-

4. CONSTITUTIONAL LAW: Sunday laws: works of necessity and charity.

5. SUNDAY: works of necessity, etc.: validity of statute.

ing within the inhibition, or the specific act or acts denounced by the statute, would be necessary; but when *all* labor is forbidden, no more specific description is needed to convey the meaning to a mind of ordinary intelligence. The exception provided by the statute is applicable to any and all kinds of labor which are shown to be either necessary or charitable. There is no chance for mistake or misconstruction on the part of any citizen honestly desiring to obey the law. If counsel's contention in this respect be correct, then there can be no effective regulation of labor by a general statute, but there must be distinct and separate enactments for "the butcher, the baker and the candlestick maker," and for everyone of the endless list of human industries. We cannot commit ourselves to any such holding.

III. In closing his brief filed in this court, counsel for appellant emphasizes his view of the invalidity of such laws in language as follows:

"The folly of a fine in this case is well illustrated by the case of a farmer who drives into the city to church, arriving there on a Sabbath morning, lodges his mule at the livery barn, and himself stops at the common inn, hard by. He says to the liveryman, 'Clean and wash my buggy, feed and curry my mule, and trim his mane and tail.' To the innkeeper, who happens to be the same livery keeper, he says, 'Feed me, give me a bath, trim my nails, do my chiropody, shave me and cut my hair.' The innkeeper says, 'No, I can do all these things except to shave you and cut your hair or trim your beard.' The farmer says, 'What! Is my mule a more important personage than I? You curry and bathe him, cut his hair, and even wash my buggy and grease it, and this is considered lawful, yet I cannot be served.' The innkeeper replies, 'On the Sabbath, you must serve yourself.' The farmer rejoins, 'How? When? And are you not serving me when you serve my mule, my wagon?' The farmer muses, 'One may lawfully do by another that which he may lawfully do by himself,' and then adds, 'Six days of the week; yes,

seven.  Not altogether?  To what extent not?'  To this the answer must be given:  'The legislatures have not spoken, and the courts cannot speak except, You cannot disturb the peace on the Sabbath.  How?  By certain kind of work, etc.?  We answer, You cannot disturb the peace on Monday or on any day, by certain kind of work, etc.  Then, if this be true, it makes it clear that there is something left for the legislature to do.  The legislature must discriminate between the man and the mule, else we shall insist it is lawful to treat a man as good as a mule.' ''

We are not certain we catch the full force of the foregoing; but, as counsel seems to be applying to the legislature for the relief denied him by the courts, we pass it along for the study and consideration of the lawmaking body.

We find no error in the record,. and the judgment below is—*Affirmed.*

Evans, C. J., Deemer and Preston, JJ., concur.