**GREAT LAKES STEEL CORPORATION v. LAFFERTY, Township Sup'r, et al.**

No. 6686.

District Court, E. D. Michigan, S. D.
Sept. 30, 1935.

.Milburn & Semmes, of Detroit, Mich.,. for plaintiff.

Duncan C. McCrea, Pros. Atty., Sweetman G. Smith, Asst. Pros. Atty., Oscar A. Kaufman, Albert E. Champney, and Ignatius A. Salliotte, all of Detroit, Mich.,. for defendants.

Before SIMONS, Circuit Judge, and TUTTLE and O'BRIEN, District Judges.

TUTTLE, District Judge.

This is a suit by the Great Lakes. Steel Corporation, a Delaware corporation, against the county of Wayne, the township of Ecorse, in said county, and certain officers of said county and township, challenging the constitutionality, under both the Michigan State Constitution and the United States Constitution, and on various grounds, of a certain Michigan statute, and seeking to restrain the col-. lection of certain state, county, township,. and school taxes on real and personal property of the plaintiff located in such township, based upon an assessment the amount of which is claimed by the plaintiff to have been reviewed and increased under said unconstitutional statute. The jurisdiction of this court is properly invoked on the grounds, both of the requisite diversity of citizenship accompanied by the statutory amount in controversy, and of the presence of a federal question.

Temporary, as well as permanent, injunctive relief having been prayed, the cause is before this court, consisting of three judges, convened pursuant . to section 266 of the Judicial Code, being section 380 of title 28 of the United States Code (28 USCA § 380). A temporary injunction was granted, and the cause has

now been submitted, on the pleadings and a stipulation of facts, for final decree.

The plaintiff contends, among other things, that this statute is a local or special act, in a case where a general act can be made applicable, and that therefore such statute is in violation of section 30 of article 5 of the Michigan Constitution, providing that, "The Legislature shall pass no local or special act in any case where a general act can be made applicable, and whether a general act can be made applicable shall be a judicial question."

It is urged by the defendants that, aside from any other consideration, the plaintiff has the right, under section 3444 of the Michigan Compiled Laws of 1929, as amended by Pub. Acts 1931, No. 32, to pay the disputed taxes under protest and bring an' action at law to recover the amount thereof, and that therefore it has an adequate remedy at law and hence is not entitled to equitable relief herein. The said section provides as follows: "Any person * * * may pay any tax, whether levied on personal or real property, under protest, to the treasurer, specifying at the time, in writing, signed by him, the grounds of such protest, and such treasurer shall minute the fact of such protest on the tax roll and in the receipt given. The person paying under such protest may, within thirty days and not afterwards, sue the township for the amount paid, and recover, if the tax is shown to be illegal for the reason shown in such protest: Provided, That in cities where, by special provision, state and county taxes are collected by the county treasurer, suits for the recovery of state and county taxes only shall be brought against the county, and any such suit now pending or hereafter commenced against a county for the recovery of taxes so paid to the county treasurer shall proceed in all respects as provided herein for suits against townships."

The property here involved is not located in any city, and the defendants have not pointed out any statutory provision or decision indicating that the particular portion of the taxes here involved constituting state and county taxes, if paid to state or county officers, could be thereafter recovered by the plaintiff, even if held to have been illegally collected. Moreover, section 14690 of the Michigan Compiled Laws of 1929 provides that "whenever judgment shall have been recovered against any township * * * no execution shall be awarded or issued upon such judgment, but * * * it shall be the duty of the supervisor or supervisors or assessing officer or officers * * * to assess the amount thereof with the costs and interest from the date of rendition of judgment to the time when the warrant for the collection thereof will expire upon the taxable property of the township * * * upon the then next tax roll of such township"; and it does not appear whether, in view of the recently adopted amendment to the Michigan Constitution limiting the amount of taxes assessable in any one year, as hereinafter set forth, the amount of any future taxes necessary for payment of such judgment will be legally assessable upon such "then next tax roll."

The bill of complaint expressly alleges that the defendants county and township "are now so financially involved as to be unable to meet their just debts and obligations, and that it would be extremely difficult if not impossible for plaintiff to collect upon any judgment that it might obtain for the return of said taxes if paid under protest." This, obviously, is an allegation, in substance, that it is doubtful whether, if the plaintiff should make payment of the disputed taxes under protest, it would be able to recover such payment in an action at law if they should be thereafter declared invalid. The said allegation is not denied in the answer and, therefore, under General Equity Rule 30 (28 USCA following section 723), must "be deemed confessed."

The considerations just mentioned make applicable here, in our opinion, the settled rule that where it appears, in a suit in equity to enjoin the collection of taxes under a state statute, that it is doubtful whether the plaintiff, if it should pay such taxes, even under protest, would be able to recover the amount thereof at law if they should be subsequently held to have been illegally collected, there is an absence of that "certain, reasonably prompt and efficacious remedy" at law which deprives an aggrieved taxpayer of the right to injunctive relief in equity. Stewart Dry Goods Co. v. Lewis, 287 U. S. 9, 53 S. Ct. 68, 77 L. Ed. 135; Union Pacific Railroad Co. v. Board of County Commissioners. 247 U. S. 282. 284.

38 S. Ct. 510, 62 L. Ed. 1110. The contention of the defendants to the contrary cannot be sustained. This conclusion renders it unnecessary to consider other grounds for equitable jurisdiction urged by the plaintiff.

The defendants insist that the tax assessment of which the plaintiff complains has been reviewed and finally determined by the Michigan State Tax Commission, in the exercise of its broad powers under Michigan statutes whose validity is not here questioned by any party, and that therefore, irrespective of the constitutionality of the statute here attacked, as hereinafter quoted, involving only the powers of the board of review of the defendant county, which board increased said assessment, in an amount not changed by said State Tax Commission, the validity of such assessment does not depend upon the validity of the last-mentioned statute, and therefore the plaintiff has not been injured thereby and is not entitled to complain thereof. The statute prescribing the powers and procedure of the State Tax Commission under which the commission assumed to act in this connection (section 3547 of the Michigan Compiled Laws of 1929) includes the following provisions: "After the various assessment rolls required to be made under this act or under the provisions of any municipal charter shall have been passed upon by the several boards of review, and prior to the making and delivery of the tax rolls to the proper officer for collection of taxes, the said several assessment rolls shall be subject to inspection by said Board of State Tax Commissioners or by any member or duly authorized representative thereof and in case it shall appear to said board after such investigation, or be made to appear to said board by written complaint of any taxpayer, that property subject to taxation has been omitted from or improperly described upon said roll or individual assessments have not been made in compliance with law, the said board may issue an order directing the assessor whose assessments are to be reviewed to appear with his assessment roll and the sworn statements of the person or persons whose property or whose assessments are to be considered at a time and place to be stated in said order. * * * A copy of said order shall be published in at least one (1) newspaper published in

said county, if there be any, at least five (5) days before the time at which said assessor is required to appear; and where practicable, personal notice by mail shall be given prior to said hearing to all persons whose assessments are to be considered. * * * The said board, or any member thereof, shall appear at the time and place mentioned in said order, and the supervisor or assessing officer upon whom said notice shall have been served shall appear also with said assessment roll. The said board or any member thereof, as the case may be, shall then and there hear and determine as to the proper assessment of all property and persons mentioned in said notice."

It will be noted that under the statute just quoted the commission is to act on assessments "after the various assessment rolls * * * shall have been passed upon by the several boards of review"; that a copy of the commission's order for review "shall be published" as so prescribed, and "where practicable, personal notice by mail shall be given prior to said hearing to all persons whose assessments are to be considered"; and that the commission is empowered to "hear and determine as to the proper assessment of all property and persons mentioned in said notice"—this notice, manifestly, being the notice so required to be published and, "if practicable," mailed. It is undisputed that, although a copy of the order of the commission, pursuant to which it reviewed the plaintiff's assessment in question, was duly published, no notice thereof was mailed, or otherwise given, to the plaintiff and that, as stated in the aforesaid stipulation of facts, "the plaintiff had no notice of the hearings held by the State Tax Commission," although we find nothing which indicates that the mailing of such notice to the plaintiff was not entirely "practicable."

The aforesaid order recited that "whereas, the assessment rolls for" nine cities and eight townships, named in the order, including the defendant township, "have heretofore been made by the assessors of said cities and by the supervisors of the said townships, and reviewed" by the proper boards of review, and "whereas, said assessment rolls are now subject to inspection by" the commission, and "whereas, it has been made to appear to the commission that the real or personal properties of" certain tax-

payers, twenty-two in number, named in the order, "and other taxpayers, located in the above-mentioned cities and townships, have not been assessed in accordance with law and that compliance cannot be secured except by a review of said assessment rolls," therefore, said commission had "determined to review said assessments," and it was therefore ordered that "said assessment rolls containing the assessed valuations of the real and personal properties in said cities and townships shall be subject to review," and that, at certain times specified in the order, the commission "shall hear and determine as to the proper assessment of the real or personal properties of the above named taxpayers located in said cities or townships subject to ad valorem taxation, and will take such action as will correct any irregularities that may be found in the assessment of said properties." The order nowhere "mentioned" the plaintiff, as required by the clear and positive provision of the applicable statute already quoted. We conclude that even if the plaintiff had received actual notice of this order it would have had no reason to suppose that its property was to be reviewed by the commission or that it would be in any way affected by such order.

Furthermore, it will be noted that if, as plaintiff claims, the defendant board of review of Wayne county is not a constitutionally constituted tribunal, the assessment of the plaintiff in dispute was not "passed upon by the several boards of review" before being reviewed by the State Tax Commission, as required by the hereinbefore quoted statute pursuant to which the commission assumed to review such assessment.

Under these circumstances we think it clear that, even if it be assumed, as is denied by the plaintiff, that the commission reviewed the assessment of the plaintiff in question, such review was without legal basis or justification and wholly void, and that the plaintiff is not thereby precluded from seeking the relief for which it brings this suit.

We come now to a consideration of the Michigan statute whose constitutionality is here involved. This statute is known as Act No. 33 of the Michigan Public Acts, Extra Session of 1934, and is entitled, "An Act to create a county board of review in certain counties, and to prescribe its powers and duties; to abolish the township boards of review in such counties; and to declare the effect of this act."

Prior to the enactment of this statute, in all counties in the state of Michigan property subject to ad valorem taxation, including the property of the plaintiff here involved, located in any township, such as the defendant township of Ecorse, but not in an incorporated city or village, was assessed, for state, county, township, and school district taxes, by the supervisor of said township, subject to reassessment, on review, by the board of review of such township, consisting of the said supervisor and two electors of the township owning land therein. Section 1 of the last-mentioned statute provides that, "in counties having a population in excess of five hundred thousand according to the last federal census," the county board of supervisors shall "select six of their members to serve as members of the county board of review, hereby created"; that "not more than three of said members shall be selected from any one township or city"; that "said board may prescribe the manner in which assessments shall be made and records kept by assessing officers"; and that "the township boards of review in counties having a population in excess of five hundred thousand according to the last federal census are hereby abolished."

Section 3 of the act is as follows: "On the Tuesday next following the first Monday in June, the county board of review shall meet at the place theretofore determined as herein provided, and, during that day and each succeeding week day for as many days as are necessary, but not later than the third Monday in June, shall proceed to examine and review the assessment rolls of the several townships and cities within the county. The said board shall add to any roll the names of persons, the value of personal property, and the description and value of real property liable to assessment thereon, omitted from such assessment roll; they shall correct all errors in the names of persons, in the descriptions of property upon such roll, and in the assessment and valuation of property thereon, and they shall cause to be done whatever else may be necessary to make said roll comply with the provisions of this act. The board shall pass upon each val-

uation and each interest, and shall prepare a list of all properties for which a valuation greater or less than that fixed by the supervisor or assessor is determined. The said list, hereinafter referred to as 'assessment list,' shall show the name of the owner or person assessed, the description of the property, if it be real property, the amount of the assessment as fixed by the supervisor or assessor, and the amount of the assessment as fixed by the county board of review."

Section 11 of the act contains the following provisions: "Nothing in this act contained shall affect the procedure now in effect for assessing property and levying taxes in cities for city purposes and also for school purposes where school taxes are collected at the same time as city taxes. In any city where, under the existing law, one assessment roll constitutes the assessment roll for city purposes, or for city and school purposes, as well as for state and county purposes, said assessment roll as prepared by the assessing officer or officers of such city shall be reviewed as provided in the city charter and when approved as provided therein, the same shall be the assessment roll for city tax purposes and also for school tax purposes where school taxes are collected with the city taxes, but for the purpose of state and county taxes said assessment roll shall be subject to further review and change as herein provided."

The other provisions of the act relate to matters of detail and need not be recited or summarized here.

Whether this statute is a local or special act, as claimed by the plaintiff, or a general act, as urged by the defendants, depends upon the question whether the classification of counties on which it is based has a reasonable relation to the object of such statute. City of Allegan v. Consumers' Power Co., 71 F.(2d) 477, 480 (C. C. A. 6), and cases therein cited.

It appears from the stipulation of facts that the only county in Michigan having a population of more than 500,000 is the defendant county of Wayne, whose population according to the last federal census was 1,888,946; the next most populated county in the state being Kent county, with a population of 240,511. Hence, it is obvious that this statute was intended by the Michigan Legislature to be applicable only to Wayne county, at least

for many years to come. The question, therefore, presented in this connection is whether there is such a difference, resulting from population, between Wayne county and the other eighty-two counties in Michigan, as affords a reasonable basis for the difference, prescribed by this statute, in the method of making and reviewing assessments of property in townships, outside of cities and villages, as between townships in Wayne county and those in the other counties just mentioned, and the resulting classification of counties on which such statute is based; and after careful consideration of the numerous, extensive, and exhaustive briefs of the parties, we are unable to find any such difference, or any reasonable relation between the population of Wayne county, as distinguished from that of the other counties in the state, and the object of this statute.

The argument of the defendants to the effect that the membership of the board of supervisors of Wayne county is so large and unwieldy, as compared with those of smaller counties, that the resulting difficulty of proper equalization of taxes between the various townships and municipalities in said county furnishes a reasonable basis for the classification of counties here made, does not impress us, not only because it seems clear that the effect of this statute is not to reduce but to increase (from three to six) the membership of the board which reviews the assessments in a township, but also because, as already noted, the statute makes no change in the method of assessing city taxes in cities located in the county affected by such statute, so that this claimed theory of reasonableness of classification is not even consistently applied.

It is further contended by the defendants, in substance, that the recent constitutional amendment, adopted in 1932 as section 21 of article 10 of the Michigan Constitution, limiting the total amount of taxes against property in any one year to $1\frac{1}{2}$ per cent. of the assessed valuation of said property, subject to certain exceptions and conditions not material here, created new problems of equalization in Wayne county, arising from the difficulty of equitably adjusting the burdens of taxation among the various overlapping units of local government in such county, and justifying the centralization, in one county board, of the power to

review the assessments in the townships, as an aid to such equalization. This argument, however, apparently overlooks or ignores the fact that the new problems of equalization thus created are by no means peculiar to Wayne county, but are common to each of the numerous counties in the state which, as we take judicial notice, contain a number of separate townships and other local units of government and which are confronted by this same difficulty of tax adjustment.

Nor can we agree with the contention of the defendants that the size, value, and diversity of property in a county having a population in excess of 500,-000 presents a peculiar need for the centralized board of review prescribed by this statute, which furnishes a proper basis for the classification underlying the statute. We see no reason to suppose that the problem of reviewing the assessments of property located in a township in a county with a population of more than 500,000 is so different from that presented with respect to property in a township in a county with a population of 500,000 or less as to justify this difference of method, or if so, that a county board of six members, not more than three of whom are selected from such township, is in any way better able to review such assessments than the board of review of three local residents which is abolished and supplanted by the provision of this statute. Indeed, it seems to us that any force which this argument might otherwise have is destroyed by the presence in the statute of the provision, already quoted, excepting from its operation the review of assessments for city taxes of property in cities, where, if anywhere, density of population might be expected to affect the size, value, or diversity of property and produce any resultant difference in the nature of the assessment thereof.

We are of the opinion that the statute under consideration is a local act, within the meaning of section 30 of article 5 of the Michigan Constitution hereinbefore quoted, and that, as this statute was enacted in a case where a general act could be made applicable, it contravenes the said section of the Constitution and is void; and that, for that reason, if no other, the plaintiff is entitled to the relief prayed by its bill of complaint. There is, therefore, no occasion to consider other constitutional questions raised by the plaintiff. A decree may be presented in conformity with the terms of this opinion.