GIFFORD KNUDSON et al., Appellants, v. L. O. LINSTRUM, County Auditor, Appellee; POLK COUNTY et al., Interveners, Appellees.

No. 46053.

March 27, 1943.

Rehearing Denied June 18, 1943.

Ralph N. Lynch, of Des Moines, for appellants.

Francis J. Kuble, County Attorney, and James P. Irish, Assistant County Attorney, for appellee.

Fred T. Van Liew, Bruce J. Flick, Carl J. Stephens, Ben C. Buckingham, and Herrick, Sloan & Langdon, all of Des Moines, for intervener-appellees.

GARFIELD, C. J.—Chapter 202, Laws of the Forty-ninth General Assembly, according to its title, is "AN ACT providing for the procedure for assessing real and personal property * * * in cities having more than one hundred twenty-five thousand (125,000) population * * *." Some of the provisions of the law are explained in Tusant v. Des Moines, 231 Iowa 116, 300 .N. W. 690. Section 1 provides:

"Within thirty (30) days from the taking effect of this Act, in cities having more than one hundred twenty-five thousand (125,000) population, the city council, the school board and the county board of supervisors each shall appoint at a regular meeting by a majority vote of the members present, one qualified

person to serve as a member of an examining board to give an examination for the positions of city assessor and deputy assessors. * * *''

Subsequent sections provide for terms of members of the examining board; examinations to be given by the board to applicants for assessor; selection of an assessor by members of the board of supervisors, school board, and city council from among applicants who pass the examination; term of office and manner of removal of the assessor; selection of deputy assessors; compensation of the assessor and his deputies; appointment, terms, compensation, and duties of members of a local board of review of assessments; manner of protesting before the board of review and taking appeals to the district court therefrom.

Plaintiffs are citizens, residents, and taxpayers of Des Moines. They contend the law violates two sections of the Iowa Constitution: section 6, Article I, providing that ''laws of a general nature shall have a uniform operation,'' and section 30, Article III, prohibiting local or special laws for the assessment and collection of taxes (and certain other purposes) and requiring laws to be general and of uniform operation throughout the state.

Polk County, in which Des Moines is situated, the Independent School District of Des Moines, and the City of Des Moines intervened in the action. They joined defendant county auditor in a motion to dismiss plaintiffs' petition, alleging, in substance, that it appears from the petition the law is not invalid in any of the respects claimed. The trial court sustained the motion. Plaintiffs refused to plead further and elected to stand upon their petition. A decree was thereupon entered dismissing the petition, from which plaintiffs have appealed.

I. We have said repeatedly that we will not declare legislation unconstitutional unless the violation is clear, palpable, and free from reasonable doubt.

II. Does the act in question satisfy the constitutional requirement of a general law having a uniform operation, or is it local or special? It is clearly a law for the assessment and collection of taxes. To be constitutional a law need not operate uniformly upon all people of the state, nor, when pertaining to

cities, upon all cities of the state. Even though the legislation at a given time operates as to only one city, if it is so drawn as to apply upon the same condition, when and where it arises, to other cities which subsequently fall within the designated class, the constitutional requirement is met, provided the classification is reasonable. State ex rel. West v. City of Des Moines, 96 Iowa 521, 526, 65 N. W. 818, 31 L. R. A. 186, 59 Am. St. Rep. 381; Cook v. Hannah, 230 Iowa 249, 253, 297 N. W. 262; 59 C. J. 760, section 353.

It is a matter of common knowledge of which we take judicial notice that Des Moines is the only city in the state with a population of more than 125,000. Of course, this was known to the legislature. It is apparent, therefore, that this measure was intended to and does have immediate application only to Des Moines. It does not follow, however, that it is a local or special law, unless, according to its terms it can never operate upon any other city. The vital question, therefore, is whether the act is applicable to cities which may subsequently attain a population of 125,000.

Plaintiffs emphasize the fact that the law, by the terms of both the title and section 1, applies to "cities having more than 125,000 population" and not to "cities now or hereafter having more than 125,000 population." It may be conceded that the language last quoted would have been preferable. However, we are not prepared to hold, as plaintiffs contend, that the wording of the law is the equivalent of "cities *now* having more than 125,-000 population." If we are to adhere to what we have said in prior decisions, the language used is not fatal to the validity of the law.

Tuttle v. Polk & Hubbell, 92 Iowa 433, 443, 60 N. W. 733, involved legislation applicable to "all cities of the first class in this state, containing according to any legally authorized census or enumeration a population of over thirty thousand." Acts of the Twenty-first General Assembly, chapter 168, section 1. At that time Des Moines was the only city in that class. It was held that the act was general and not special because it was not restricted to cities having the required population at the date it became a law, but applied to all cities which should thereafter have more than thirty thousand inhabitants. Owen v. City of

Sioux City, 91 Iowa 190, 59 N. W. 3; Haskel v. City of Burlington, 30 Iowa 232, 236; Iowa Railroad Land Co. v. Soper, 39 Iowa 112, 115, were cited.

State ex rel. West v. City of Des Moines, 96 Iowa 521, 526, 527, 65 N. W. 818, 820, 31 L. R. A. 186, 59 Am. St. Rep. 381, involved an act which extended "the boundaries of all cities in this state, which had, by the state census of 1885, a population of thirty thousand or more." Acts of the Twenty-third General Assembly, chapter 1, section 1. Since Des Moines was the only city having such population, it is apparent the act by its terms could never apply to any other city. This court, therefore, properly held the law violated the constitutional provisions which these plaintiffs invoke. However, the following language of the opinion distinguishes that case from the present:

"Had the act in question been made applicable to all cities of over thirty thousand inhabitants, without a qualification that, under known facts, would exclude its operation as to any other such city, the case would be different."

In State ex rel. Pritchard v. Grefe, 139 Iowa 18, 30, 117 N. W. 13, a statute was considered which provided for the consolidation of school districts "in all cities of the first class containing a population of fifty thousand or over, according to any census taken." Acts of the Thirty-second General Assembly, chapter 155, section 1. Des Moines was the only city with the required population when the law took effect. The statute was held to be general and of uniform operation.

In State ex rel. Welsh v. Darling, 216 Iowa 553, 561, 562, 246 N. W. 390, 394, 88 A. L. R. 218, we upheld a statute "creating," according to its title, "a park board in cities having a population of one hundred twenty-five thousand (125,000) or more." Acts of the Forty-fourth General Assembly, chapter 149. The court said, speaking through Stevens, J.:

"It is suggested that the title to the enactment does not carry out the idea that it was designed to apply to cities subsequently acquiring the required population. We think the suggestion not well taken. The language of the title makes it applicable to all cities having a population of 125,000 or more, and

provides the powers and duties thereof. The title is ample. Of course, direct provision might have been made for cities subsequently coming within the classification, but it would hardly do to place so narrow a construction thereon as to deny its practical application thereto.''

We find the following in 12 Am. Jur. 169, 170, section 489:

''Although the authorities on the point are in conflict, it appears to be the better view that a statute which classifies cities or other localities to be governed by its provisions by a given or fixed population 'according to the last United States census' will be held to apply to all other cities or localities which under any Federal census may in the future pass into such class, and is valid.''

See, also, 59 C. J. 760, section 352, n29.

The law in question here is in general terms. It refers to ''cities having more than one hundred twenty-five thousand (125,000) population,'' not to cities *now* having the requisite population. Chapter 203, Acts Forty-ninth General Assembly, which amends chapter 202, refers to the present assessors and their deputies who will be displaced by the assessors and deputies chosen pursuant to the act. Had the legislature intended the law to apply only to Des Moines, it could easily have so stated. Of course, it is possible for local or special legislation to be enacted under the guise or pretense of a general law. Where this is obvious, it is our duty so to hold. That situation existed in State ex rel. West v. City of Des Moines, supra, 96 Iowa 521, 65 N. W. 818, 31 L. R. A. 186, 59 Am. St. Rep. 381. However, this court should be slow to attribute to the legislature a purpose to deceive. It is our duty to construe the act, if possible, so as to avoid holding it unconstitutional. We think, therefore, it is entirely possible and well within the authorities to construe the act as applicable to cities now or hereafter having more than 125,000 population.

But, plaintiffs argue, the law by its terms becomes operative in Des Moines within thirty days from the date it takes effect by publication but specifies no machinery by which it shall become operative in cities other than Des Moines which subsequently

attain the required population. If we are to follow our decision in State ex rel. Welsh v. Darling, supra, 216 Iowa 553, 560, 561, 246 N. W. 390, 88 A. L. R. 218, the contention must be rejected. It is true section 1 of the park-board law under consideration in the Darling case [chapter 149, Acts of the Forty-fourth General Assembly] provides that the act applies "only to cities now or hereafter having a population of one hundred twenty-five thousand (125,000) or more." However, the only provision of the park-board statute that undertakes to establish such a board is section 2, which reads:

"Within sixty (60) days after the taking effect of this act, in all cities now having a population of one hundred twenty-five thousand (125,000) or more according to the last state or federal census, there shall be established in accordance with the terms of this act, a permanent park board for such city."

Subsequent sections of the park-board law provide:

"3. Such park board shall consist of ten (10) members. * * *

"4. It shall be the duty of such board to plan the city's parks * * * In the expenditure of funds, said board shall be governed by the ordinances of the city applicable thereto.

"6. Said board shall make an annual report to the city council * * *."

It will be noticed that this law establishes a park board only in cities "*now* having a population of one hundred twenty-five thousand (125,000) or more." Des Moines, of course, was the only city answering that description. References in subsequent sections of the law to "such park board," "such board," and "said board" are obviously to the board established by section 2 of the act. The law provides no machinery by which the act can operate in cities subsequently attaining such population. Nevertheless, we upheld the act against the same attacks now made against the assessor law by plaintiffs, on the theory that the act by implication becomes operative in other cities of the designated class.

Principal basis for plaintiffs' contention that the law in question provides no machinery by which it may become opera-

tive in cities other than Des Moines is that sections 2, 6, and 15 fix the terms, respectively, of the first members of the examining board, assessor, and members of the board of review. Each section, however, provides that subsequent terms shall be for six years. The act, therefore, could readily become operative in cities attaining the specified population after the times fixed for expiration of the initial terms. It is true that in such cities the terms of members of the examining board and board of review would not, by the provisions of the law, be "staggered." But it must be presumed the legislature did not deem this necessary. This circumstance is insufficient to invalidate the law.

III. Plaintiffs also contend the classification adopted by the legislature has no reasonable relation to the purposes of the act and unjustly deprives plaintiffs of rights and immunities accorded other citizens, in violation of section 6, Article I, and section 30, Article III of the State Constitution. It is also claimed there is a denial of the equal protection of the laws guaranteed by section 1 of the Fourteenth Amendment to the Federal Constitution.

It is fundamental that legislative classification must be reasonable and based on some substantial distinction. Classification must rest upon material differences between those included within the law and those excluded. Keefner v. Porter, 228 Iowa 844, 848, 293 N. W. 501; Hubbell v. Higgins, 148 Iowa 36, 40, 126 N. W. 914, Ann. Cas. 1912B, 822, and citations; 12 Am. Jur. 151, section 481; 16 C. J. S. 954, 955, section 489.

It is also well settled that classification is primarily a question for the legislature, which exercises a wide discretion in determining the class to which an enactment is to apply. Cook v. Hannah, supra, 230 Iowa 249, 253, 297 N. W. 262, and cases cited; 16 C. J. S. 471, 489, section 154. It has also been frequently recognized, as plaintiffs concede, that valid classifications are often based on population. 12 Am. Jur. 169, section 489; 16 C. J. S. 961, 963, section 494.

We hold the classification contained in this law is valid. We are not prepared to say that the problems of assessing property for taxation in Des Moines and any other cities which may attain a population of 125,000 are not such as to justify the application to them of this law. We took occasion, in Tusant

v. Des Moines, supra, 231 Iowa 116, 128, 300 N. W. 690, to comment on one condition that the law was designed to remedy—much expensive litigation. It is doubtless true that some conditions are common both to the cities within and those without the scope of the act. But we cannot say the classification is capricious or arbitrary or that it bears no reasonable relationship to the purposes which the legislature sought to accomplish.

 Principal complaint is directed against section 23, prescribing the procedure to be followed by a taxpayer in protesting to the board of review. Such protest is required to be in writing, specifying one or more of the grounds enumerated. The requirements pertain merely to matters of procedure and do not affect the substantial rights of the taxpayers affected. Furthermore, even if section 23 were invalid it would not result in invalidity of the entire law. Davidson Bldg. Co. v. Mulock, 212 Iowa 730, 756, 235 N. W. 45. See, also, Smith v. Thompson, 219 Iowa 888, 894, 258 N. W. 190. The act contains "a saving clause."

 Plaintiffs also contend the law is discriminatory because section 16 provides that protests not disposed of by the board of review on August 1st shall be automatically overruled, and because the term of the assessor is six years, rather than two years, as elsewhere. It is sufficient to say that these provisions do not render the entire law invalid in the respect claimed.

The decree is—Affirmed.

BLISS, HALE, WENNERSTRUM, and MANTZ, JJ., concur.

SMITH and MULRONEY, JJ., dissent.

OLIVER, J., dissents from Division II.

MILLER, J., takes no part.

SMITH, J. (dissenting)—I regret I am unable to concur with the majority in a decision of such importance. It involves legislation undoubtedly deemed by its proponents to be desirable in order to furnish assessing machinery in larger cities different from that used generally throughout the state. I have no knowledge of the conditions it was designed to correct, and, of course, no opinion as to the desirability of the object or the effectiveness of the remedy.

We must start with two main propositions in mind: First, that the legislature is presumed to have kept within the limits set by the constitution and that it is our duty to uphold the act in case of doubt; but, second, that it is our paramount duty to uphold the constitution if the act offends, and to do this regardless of the consequences. It is not necessary to cite authority upon either of these elementary propositions.

Two constitutional provisions are involved. Section 30, Article III, of the Iowa Constitution, expressly forbids local or special laws "for the assessment and collection of taxes"; section 6, Article I, requires that "All laws of a general nature shall have a uniform operation."

As this statute is, on its face, one "providing for the procedure for assessing real and personal property," it can be sustained, if at all, only as a "law of a general nature." It cannot exist as a "local or special" law.

Our inquiry narrows down, therefore, to just one question: Is chapter 202 of the Laws of the Forty-ninth General Assembly a law of a "general nature" having "uniform operation"? If not, it violates section 30 of Article III of the constitution. This inquiry, however, involves two considerations: First, whether the subject matter is such as to justify a classification based solely on population; and second, whether, assuming the basis of classification is proper, its provisions nevertheless make it a local or special law.

I. I am especially concerned with the second consideration. It may be conceded that the constitutional provision does not require that the law operate uniformly on all the people of the state, nor, when pertaining to cities, that it operate uniformly on all cities; nor even that if at a given time it operates only upon one city, it will still be general if so framed as to operate upon other cities as they come within the class of the future. I have no quarrel with the authorities cited by the majority opinion to this point.

But where the basis of classification is such that new members may come into existence the law must be so framed as to include them when they arrive. 59 C. J. 728, 731, section 318. " * * * the test being whether other municipalities from time to time may be included, or are permanently excluded." 59 C. J.

760, section 353. These principles are not questioned by the parties here.

Was this act so framed? I think not. In fact, a plain reading of it, without reference to the language of the title, shows that the legislature had in mind but one city and was making no effort to adapt the legislation to other cities as they would enter the population class.

Section 1 of the act starts out with the words:

"Within thirty (30) days from the taking effect of this Act, in cities having more than one hundred twenty-five thousand (125,C00) population, the city council, the school board and the county board of supervisors each shall appoint * * *."

This is just as definitely limited in application to the one city with more than 125,000 population existing when the act "took effect," as was the language in State ex rel. West v. City of Des Moines, 96 Iowa 521, 526, 65 N. W. 818, 820, 31 L. R. A. 186, 59 Am. St. Rep. 381, which said: "' 'all cities in this state, which had, by the state census of 1885, a population of thirty thousand or more.' " It cannot by any legerdemain be made to apply to cities "hereafter" having the necessary population. It is the one place in the entire act that defines the "cities" to be affected by its provisions. They must be those then existing or the machinery could not be started "within thirty (30) days from the taking effect of this Act."

State ex rel. West v. City of Des Moines, supra, is exactly in point, and in that case this court said, at page 527 of 96 Iowa, page 820 of 65 N. W.:

"The act is singularly specific in this respect, not even permitting any chances as to what might be the actual population of other cities but making it dependent on the census return of 1885, known at the time the act was passed, which clearly proves that only the city of Des Moines was intended as the subject of such legislation."

With equal truth it may be said here that it was known when this act took effect that only the city of Des Moines could start within thirty days to put the machinery in motion.

Every succeeding section of the act of necessity refers to

720

the cities able to comply with the requirement contained in section 1. Nowhere is there any mandate to "cities" generally of that population class or to any which might qualify.

The majority opinion quotes from State ex rel. West v. City of Des Moines, supra, this language, to distinguish it from the instant case:

"Had the act in question been made applicable to all cities of over thirty thousand inhabitants, without a qualification that, under known facts, would exclude its operation as to any other such city, the case would be different."

Instead of *distinguishing it from*, I think it clearly *identifies it with* this case. This act qualifies the classification by the words: "Within thirty (30) days from the taking effect of this Act." No other city of over 125,000 population is referred to.

Great reliance is placed upon State ex rel. Welsh v. Darling, 216 Iowa 553, 246 N. W. 390, 88 A. L. R. 218. It is easily and clearly distinguishable. In the first place, the legislation considered in that case contained what is nowhere found here— an express *enactment* that "This act shall apply only to cities now or hereafter having a population of one hundred twenty-five thousand (125,000) or more." Acts of the Forty-fourth General Assembly, chapter 149, section 1. And, in the second place, the court, in the Darling case, found that the machinery provided for putting the law into effect could be adapted to cities qualifying later.

That cannot be said of the machinery set up by this act. It provides for term of office of the members of the examining board, of the assessor, and of the members of the board of review, with a particularity as to dates of commencement and termination that completely negatives the possibility of adapting it to any city not in the class when the act took effect. In no city except Des Moines could that machinery ever be set in motion.

Appellees tried to get around this difficulty by construing the words "from the taking effect of this Act" to mean from its "taking effect" in each city as such city comes within the classification. What I have already pointed out with regard to the machinery of the act completely answers that argument.

It clearly shows that the words mean "when the Act becomes law"—in other words, "the effective date" of the act.

The language "the taking effect of this Act" has not been construed in any case cited by either appellants or appellees or in any case I have found, but it is no stranger to our law. Our constitution itself uses the expression "take effect" as referring to the time when an act of the General Assembly becomes law. Constitution of Iowa, section 26, Article III. The legislature uses it for the same purpose. Code sections 53 and 54. Appellees so construed it when they drew their motion to dismiss and said the act "is not a special or local law * * * being by its terms applicable to all cities which upon the effective date of the Act have a population of more than 125,000, and which thereafter come within the provisions of the Act by attaining" such population.

The same language appears in section 19 of the act in so unmistakable a connection that it seems to foreclose all argument as to meaning: "From the date of the taking effect of this act and until January 1, 1942, the expenses of the examining board * * * shall be paid by the county * * *."

The majority opinion refers to other cases where was involved legislation applicable to "all cities" of certain population specifications and in which the legislation was held to be general and not special, though Des Moines was the only city in the class. I have no criticism of such cases. It will be found in every case the language was broad enough to admit cities thereafter coming into the described class.

It is to be remembered there is no such unqualified language here in the act itself. The unqualified language "in cities of more than one hundred twenty-five thousand (125,000) population" occurs in the title of the act and again in section 20. But this court has said:

"It is only where the language of the statute is ambiguous or doubtful that the court may look to the preamble or title or heading to ascertain the legislative intent." State v. Linsig. 178 Iowa 484, 488, 159 N. W. 995, 996.

And in an earlier case the court said:

"It is the general rule in this country that where the meaning of the statute is doubtful, but in no other case, recourse may be had to the title for explanation, but it cannot be used to extend or limit the positive language of the statute." Lederer & Strauss v. Colonial Inv. Co., 130 Iowa 157, 158, 106 N. W. 357, 358, 8 Ann. Cas. 317.

Is the language of this act doubtful? I think not. The opening language: "Within thirty (30) days from the taking effect of this Act, in cities having more than one hundred twenty-five thousand (125,000) population * * * " is direct and clear and every word of the statute thereafter fits perfectly into its meaning. There is not one suggestion that it was intended to legislate for any city later coming into the class and not one mandate that any city qualifying later be admitted.

In State v. Linsig, supra, the court says:

"It is not competent for the court to resort to forced or subtle reasoning for the purpose of either limiting or extending the effect of a statute."

The language is pertinent here. The act can never be put into effect in any city other than Des Moines without writing into it adjustments and meanings that the legislature did not see fit to write into it. This we should not do. Courts are and should be jealous not to invade the province of the legislature. Our duty is to construe, not to amend. We should not add provisions to the statute that are not already there either in express language or by reasonable implication. To do this, even in order to sustain the act, is itself an assumption of legislative power.

Applying this test, I am driven to the conclusion that the act in question is in violation of section 30, Article III of the constitution, and is not a law of a general nature having a uniform operation as required and defined by section 6, Article I.

For the reasons stated I am compelled to dissent from the opinion of the majority. I think the decision of the lower court should be reversed.

II. There remains the other consideration as to whether the subject matter of the act in question here is such as to jus-

tify the classification adopted. While willing to concede that a population classification might be upheld for some purposes connected with the assessment of property for taxation, I am convinced this statute does not reveal any such purpose. Accordingly, I join in the dissenting opinion of Justice Mulroney which is devoted to that branch of the case.

OLIVER, J., joins in Division I of this dissent.

MULRONEY, J. (dissenting)—I concur in the dissenting opinion of Justice Smith, but, because I believe this law also violates section 6, Article I of the Iowa Constitution in that there is no relationship between the purposes of the law and the classification, I desire to state my views.

Chapter 202, Acts of the Forty-ninth General Assembly provides that in cities of more than 125,000 population, an examining board will be created "to give an examination for the positions of city assessor and deputy assessors." This board shall consist of one "qualified person" selected by the city council, one by the board of supervisors, and one by the school board. It is not stated that members of this examining board shall be qualified electors of the city or county, but the duty of this board is to conduct an examination covering the assessment of property and related subjects and to submit the list of those who pass the examination with a grade of seventy per cent to the city council, the board of supervisors, and the school board. Thereafter, the city council, the board of supervisors, and the school board meet and appoint a city assessor from this list. The majority vote of the members present of the heads of each separate taxing body counts as one vote toward the selection of a city assessor. The city assessor then takes office for a six-year term and he appoints ten deputies who have successfully passed a somewhat similar examination conducted by the examining board. A board of review, consisting of five members, is then selected by the three taxing bodies in the same manner that these bodies select the assessor. The terms of the members of the board of review are six years each. The duties of the assessor and board of review are in general the same as those duties now performed by all assessors and boards of re-

view in Iowa. The act provides that the three taxing bodies shall determine the number of deputies and other personnel of the assessor's office, and the compensation to be paid the assessor, the members of the board of review, and all other employees, and it further provides that each of the three taxing bodies shall contribute one third of the amount required to pay all of said salaries and expenses.

By section 23 of the act, an aggrieved taxpayer can appeal to the board of review only by means of a written protest confined to one or more of five grounds. These grounds include that the assessment is not equitable; that the property is assessed for more than the value authorized by law; that the property is not assessable; that there is error in the assessment; and that there is fraud in the assessment. The board of review is given until August 1st to act upon protests in its hands, but undisposed-of protests are on that date "automatically overruled." Section 16.

From this summary of the act it will be seen that this law makes radical changes in the assessment and review machinery in cities of more than 125,000 population. The assessor, who in all other cities is appointed by the city council, is, under this act, selected by the city council, board of supervisors, and school directors. The assessor, who in all other cities is paid from county funds, is, under this law, paid one third from city funds, one third from school funds, and one third from county funds. The board of review created by this law is entirely new. The board of review, which in all other cities is composed of elected city officials, is, under this law, appointed by the city council, board of supervisors, and school board. It will be observed that, under this law, one third of the appointive power of the assessor and board of review, namely, the board of supervisors, is controlled by persons who are not residents of the city. Another third is controlled by the school board. The act seems to assume that there will be but one school board in the city, though obviously there could be more than one. The boundaries of city school districts frequently extend into rural areas.

The taxpayer's rights also change somewhat under this law. The taxpayer is confined to the enumerated grounds of protest. It is true that in general these grounds follow the

ordinary grounds which a taxpayer may assert before all other boards of review in Iowa, but it is doubtful whether the taxpayer could, under these enumerated grounds, assert that an assessment is illegal though not fraudulent, and there does not seem to be any provision whereby a taxpayer could, under these grounds, question the authority of the person making the assessment. The undisposed-of protests are automatically overruled, under this law, on August 1st, whereas this court has held that the time when other local boards of review shall adjourn is directory only. Hawkeye Lumber Co. v. Board of Review, 161 Iowa 504, 143 N. W. 563.

The validity of this statute is assailed on the ground (among others) that it violates section 6, Article I, of the Constitution of the State of Iowa, which provides as follows:

"All laws of a general nature shall have a uniform operation; the General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms shall not equally belong to all citizens."

It is elementary that a law that deals with the assessment of property for general tax purposes is a law of a general nature. Our inquiry, then, is whether this law of general nature has uniformity of operation. Uniformity of operation does not mean that the law must operate upon every citizen alike. A law is uniform if it operates alike upon all within a reasonable classification. If the classification is not reasonable, but arbitrary, then there are others, who are outside the arbitrary classification, upon whom the law does not operate, and the law is unconstitutional as not uniform in operation. So our inquiry is narrowed to a determination of whether the classification embraced in this law is a reasonable classification. Population may be a proper basis of classification. When it is a proper basis, then the law, operating within a certain population classification only, is a law of general nature with uniform operation within the constitutional provision. State ex rel. Welsh v. Darling, 216 Iowa 553, 246 N. W. 390, 88 A. L. R. 218, and cases therein cited. The act, by its terms, is applicable only to cities having a population of more than 125,000. It is a matter of which judicial notice will be taken that the city of

Des Moines alone has a population of 125,000. The mere fact that but one city at present meets the statutory requirement is not fatal to the validity of the act. The general rule is that when population is used as the basis for classification it must have a reasonable relation to the purposes and objects of the legislation. The rule is well stated by Justice Stevens in the case of State ex rel. Welsh v. Darling, 216 Iowa 553, 555, 246 N. W. 390, 391, 88 A. L. R. 218:

"Classification, to meet the requirements of the Constitution, must be based upon something substantial—something which distinguishes one class from another in such a way as to suggest the reasonable necessity for legislation based upon such classification." (Citing a long list of cases.)

In 12 Am. Jur. 169, 170, section 489, it is stated:

"It is a mistaken idea that because classification on the basis of population is sustainable in respect of legislation on certain subjects, it may be appropriate for all purposes of classification in legislative enactments. Such a basis for classification must have a reasonable relation to the purposes and objects of the legislation and must be based upon a rational difference in the necessities or conditions found in the groups subjected to different laws. If no such relation and differences exist, the classification is invalid. For example, since there is no relation between a person's fitness for jury service and the size of the county in which he resides, a discrimination in a statute controlling jury service based upon the population of the county involved is invalid."

Turning now to chapter 202, I fail to see any relationship between the population classification and the new assessment and appeal structure that this assessor law provides. It may be a wholesome thing to have the board of supervisors of the county a part of the appointive power of the assessor's office, since the county always bore the burden of paying the assessor's salary. But, why is this a good thing only in cities of 125,000 population? On the other hand, it may be right and proper to have the city pay part of the expense of assessment, for the city council appointed the assessor. But, why is this right

and proper only in cities of 125,000 population? Perhaps the school board, the taxing body that usually certifies the highest levy, should have a voice in the appointment of the assessor and the board of review, and perhaps it should bear part of the burden of paying these officers. But, why should this be true only in cities of 125,000 population? No reason suggests itself why all these changes in the appointive power and the assessor's office are rendered necessary by a dense population center. Why should a heavy population make it necessary to lodge a part of the appointive power in persons who are not residents of the city? Why should the school district have a part of the appointive power in large cities only? And why should the school district pay a part of the assessment expense and board of review expense only in large cities?

As we have seen, the taxpayer's right under this new law is somewhat curtailed. But, why should the protesting taxpayer's rights be curtailed in any manner in a large city? It is significant that, upon appeal from the board of review, no taxpayer can assert any ground that was not urged before the board of review, and therefore it is important that all taxpayers be given the same right to urge the same grounds of protest before boards of review.

I fail to see how it can be said that these changes in the assessment and review laws of Iowa will aid in the handling of the peculiar assessment problems caused by a heavily populated community. It is not enough that these laws will enable the better handling of assessments and review in the large city. In order to determine whether the classification is reasonable, we must find that the law is designed to facilitate the handling of the assessment problems caused by the dense population of a large city. The classification of population must bear a reasonable relation to the law.

We all know that there are assessment problems and review problems present in a large city that are not present in a smaller one. It would seem that the main problem caused by the high population would be a matter of volume. The population classification would, quite clearly, be a reasonable basis upon which to enact legislation which would give to the large city more

local boards of review, or more assessing officers, or additional salary for the personnel.

This law appears to be the Iowa Legislature's first attempt to change the general assessment and review laws of Iowa by a statute that will not have state-wide application. Counsel for appellee in their brief do not refer us to any law of any other state, or any decision of any other state, where, under like constitutional provisions, a similar law was passed or upheld by the court of any state. Indeed, counsel for appellee cite but five cases in their entire brief in defense of all the constitutional attacks made against this law. The five cases are all Iowa decisions. They are: State ex rel. Welsh v. Darling, 216 Iowa 553, 246 N. W. 390, 88 A. L. R. 218; Loftus v. Department of Agriculture, 211 Iowa 566, 232 N. W. 412 [appeal dismissed 283 U. S. 809, 51 S. Ct. 647, 75 L. Ed. 1427]; Eckerson v. City of Des Moines, 137 Iowa 452, 115 N. W. 177; Tuttle v. Polk & Hubbell, 92 Iowa 433, 60 N. W. 733; Haskel v. City of Burlington, 30 Iowa 232. None of these cases is authority for the proposition that the population classification here attempted will support a law that changes the general tax statute.

The decisions of other jurisdictions show that the courts have been rather quick to strike down, as unconstitutional, such laws, applicable only to large cities. Space will permit only a brief reference to these cases, but it is significant that many other states have one or two large cities and the courts have not permitted such changes in the general tax laws applicable to those cities only.

The California Supreme Court held a law changing the manner of the publication of the delinquent tax list, applicable only in Los Angeles county, unconstitutional. See Consolidated Printing & Publishing Co. v. Allen, 18 Cal. 2d 63, 112 P. 2d 884.

A three-judge federal court, with the Supreme Court of the United States affirming, held a Michigan law creating a county board of review, applicable only to Wayne county where Detroit is situated, was unconstitutional. See Great Lakes Steel Corp. v. Lafferty, D. C., 12 F. Supp. 55, affirmed Wayne County Board of Review v. Great Lakes Steel Corp., 300 U. S. 29, 57 S. Ct. 329, 81 L. Ed. 485.

The Supreme Court of Wisconsin held a law eliminating

publication of the delinquent tax list and providing only for a published notice of sale, applicable only to Milwaukee county, was unconstitutional. See Pedro v. Grootemaat, 174 Wis. 412, 183 N. W. 153.

The Supreme Court of Kentucky held that the high population of Louisville afforded no reasonable classification upon which to base a law, applicable only to Louisville, providing for monthly advancement of salary and expenses to the city assessor (James v. Barry, 138 Ky. 656, 128 S. W. 1070), or providing for registering of motor vehicles by the state tax commission employees in Louisville only (Nuetzel v. State Tax Commission, 205 Ky. 124, 265 S. W. 606), or providing for the appointment of the city alcoholic-beverage administrator by the State Tax Commissioner of Revenue in Louisville only (Chandler v. City of Louisville, 277 Ky. 79, 125 S. W. 2d 1026).

For other cases involving the same question, see, Gaylord v. Hubbard, 56 Ohio St. 25, 46 N. E. 66; Felts v. Linton, 217 Ky. 305, 289 S. W. 312; Douglass v. Watson, 186 S. C. 34, 195 S. E. 116; State v. Dixon, 215 N. C. 161, 1 S. E. 2d 521; Droege v. McInerney, 120 Ky. 796, 87 S. W. 1085; Quesinberry v. Hull, 159 Va. 270, 165 S. E. 382; Raymond v. Township Council of Teaneck, 118 N. J. Law 109, 191 A. 480; Stevens v. McDowell, 151 Kan. 316, 98 P. 2d 410. See, also, 12 Am. Jur. 151, section 481.

All of these cases were decided under constitutional provisions similar to ours, forbidding nonuniform legislation. In each of them the courts held the population classification afforded no basis for the law, and the statute in each instance was held unconstitutional.

To uphold the reasonableness of this classification of 125,-000 population to do the things this law purports to do is to open the door for the worst kind of class legislation. If 125,000 population can be made the basis upon which cities are to lose two thirds of the appointing power over such important offices as assessor and boards of review, then it can be made the basis upon which they lose all power to so appoint. If one third of the appointing power can be lodged in persons who are not residents of the city, then the full appointing power can be placed outside the city. The reasoning that supports this law

would uphold the right of the legislature to pass a law transferring to the state tax commission the duty of assessment and the power of review in large cities.

The legislative history of this law shows that it was introduced by the senator from Polk county and it passed both houses without a dissenting vote, and, presumably, without debate. It is clear that Des Moines wanted the law. It was not enacted after committee study or deliberation. It is what some of the courts call "courtesy legislation." Des Moines should take care lest a future legislature use its population as a basis upon which to predicate more special legislation that perhaps it would not want. We should not here uphold the law by a "courtesy decision." The too-ready resort to the legislature to enact a palpably special law to cure local ills should be discouraged. The departure from the constitutional admonition is fraught with danger. The classification of 125,000 that begins life here, as a matter of courtesy, will remain as authority for the imposition of other special laws. I would reject such a lax view of the constitutional provision as is demonstrated by the majority opinion and insist upon its scrupulous observance. The force of the majority opinion is a ruling that the legislature had the right to force this law upon the citizens of Des Moines if not one single citizen wanted it. I am unable to concede that such power is lodged in that body under the Constitution of Iowa. I would reverse.